Colleen MUGGENBORG and Letha Haynes, Petitioners,

v.

The Honorable William C. KESSLER, the District Judge of the Court, Oklahoma County, Seventh Judicial District, Respondent.

No. 56620.

Supreme Court of Oklahoma.

June 9, 1981.

Rehearing Denied July 28, 1981.

Hammons, Wolking & Alexander by C. Elaine Alexander, El Reno, for petitioners.

Wheeler, Parsons, Wheeler & Davis by Joseph Wheeler, Oklahoma City, for respondent.

OPALA, Justice:

Two issues are presented in this proceeding: [1] Are the petitioners (maternal and paternal grandmothers of two minors whose parents are deceased) affected or interested parties who were entitled to notice of an adoption proceeding brought by the divorced maternal grandfather? [2] Will a prerogative writ lie to arrest judicial enforcement, by contempt, of an adoption proceeding found to be ineffective for want of advance notice to an affected or interested party? We answer both questions in the affirmative.

At the heart of the controversy before us is the adoption status of two minor children orphaned in May 1980 by the death of both parents. Their maternal and paternal grandparents—both divorced at the time—maintained separate homes. It was not until October 1980 that the maternal grandmother, one of the petitioners in this case, instituted in Canadian County the necessary steps for her appointment as guardian. Notice of that proceeding, which went to *all* other grandparents, advised them of a hearing scheduled for November. Unbeknown to everybody and without any prior notice, the maternal grandfather, David Arter [Grandfather], had previously commenced adoption proceedings in Oklahoma County and had succeeded in securing a final decree on October 28, 1980. He then took custody of both orphans. Learning of the decree, the maternal grandmother attempted to have it vacated. When she failed, she brought an appeal from the adverse order.

During March 1981, the children went for a weekend visit to the home of the paternal grandmother. When they were not returned some seven days later, the grandfather proceeded to enforce by contempt citation his decree-conferred status as an adoptive parent.

In the present proceeding both grandmothers seek a writ prohibiting the respondent-judge from treating the adoption decree as valid and from enforcing it by contempt.

## I.

Petitioners' principal contention is that the Oklahoma County adoption decree is void as to them. They urge that as parties affected by or interested in the proceeding they were entitled to notice under

the Uniform Adoption Act.[1] We do not regard this issue as controlling. Our view is, and we hold, that by the inexorable command of both the state and federal fundamental law notice to these petitioners was indeed their constitutional due.

In the adoption proceeding here under scrutiny the respondent-judge appointed as guardian ad litem for the children a partner of the grandfather's lawyer. No notice in any form had been given to the other grandparents, although their whereabouts and claims to the children were well known.

■ The maternal and paternal grandparents—all kindred within the same degree of consanguinity—standing alone have an equal claim to judicial approval of their quest for the care, custody and education of their orphaned offspring.[2] The maternal grandfather, *qua* petitioner for adoption, clearly did not occupy a preferred or superior status. As between living parents and grandparents adversely claiming rights to a child, either parent, unless unwilling or unfit, is generally entitled to a preference over the grandparents.[3] In contests between maternal and paternal grandparents all these kindred stand on an equal footing.[4] When both parents are either dead or their parental rights have been severed, a grandparent, although not a natural guardian,[5] has standing to claim custody of his offspring.[6] While either natural parent is alive and his parental bond remains judicially unsevered, a grandparent cannot be regarded as an affected or interested party with a right to notice in an adoption proceeding. This is so because the court's authority to entertain the adoption petition is conferred by the consent of the natural parents or of a surviving parent, if one of them be deceased, whose will (in consenting to an adoption) may not be ordinarily defeated by the opposition from a grandparent who is without some judicially recognized claim.[7] 10 O.S.Supp.1974 § 60.5(3).

Since the custodial claims of the petitioners to the orphans rest on a status co-equal with that of the grandfather's quest for adoption, we hold that under the facts of this case the petitioners were affected or interested parties entitled by the clear and inexorable command of due process to no-

---

1. *There is no provision in the Act which sets forth to whom notice of a proceeding must be given.* The Uniform Adoption Act merely provides that when both parents are dead, consent to a child's adoption must be procured from the legal guardian or guardian ad litem who "has authority by order of the court appointing him to consent to the adoption." 10 O.S.Supp.1974 § 60.5(3).

2. *Paronto v. Armstrong,* 161 Kan. 720, 171 P.2d 299, 303 [1946]; see 10 O.S. 1971 § 9.

3. *Ingles v. Hodges,* Okl., 562 P.2d 845, 846 [1977]; *Browning v. Tarwater,* 215 Kan. 501, 524 P.2d 1135, 1138–1139 [1974]; *Christlieb v. Christlieb,* 179 Kan. 408, 295 P.2d 658, 659 [1956]; *Application of Vallimont,* 182 Kan. 334, 321 P.2d 190, 193 [1958]; *Hickey v. Bell,* 391 P.2d 447, 448 [Alaska 1964]; *Application of Altmiller,* 76 Idaho 521, 285 P.2d 1064, 1068 [1955]; *In re Marriage of Croley,* 91 Wash.2d 288, 588 P.2d 738, 742 [1978]; Anno: 29 ALR3d 366, 391–394; 25 ALR3d 7, 33–39.

4. *In re Cox' Guardianship,* 12 N.J.Misc. 536, 173 A. 602, 603 [1934]; *Paronto v. Armstrong,* supra note 2. As between two grandparents, there are no presumptions in favor of either. *Shanks v. Ross,* 173 Ga. 55, 158 S.E. 700 [1931].

5. *In re Johnson,* 210 Kan. 828, 504 P.2d 217, 221 [1973]; see *contra State v. Superior Court for King County,* 41 Wash.2d 718, 251 P.2d 603, 605–606 [1952].

6. *Gould v. Smith,* Okl., 405 P.2d 82 [1965]; *Parker v. Lewis,* 45 Okl. 807, 147 P. 310 [1915]; *In re Johnson,* supra 504 P.2d note 5 at 221; *Paronto v. Armstrong,* supra note 2.

7. *Barriner v. Stedman,* Okl., 580 P.2d 514 [1978]. The case at bar is significantly different from that in *Barriner.* There the natural father was still alive when the grandparents sought guardianship. While that action was pending, the natural father gave his consent to the adoption of his child by his brother and sister-in-law. Notice had not been given to the grandparents before the adoption was completed. In *Barriner* we stated that since the only consent required was that of the natural father, the grandparents could not defeat the adoption. Because their claim had not received judicial recognition in pre-adoption stages, they were not deemed affected or interested parties entitled to notice.

tice and to the opportunity to be heard.[8] Denial of notice to them constitutes a violation of rights protected by due process.[9]

## II.

The petitioners further contend that the respondent-judge is using contempt power to enforce against them a void adoption decree. They argue that a writ of prohibition lies to arrest this attempted application of unauthorized judicial force.

■■ The trial court's action in attempting to enforce the decree does indeed constitute an assumption of judicial power not granted by law. Prohibition is available to arrest a legally unauthorized action that is subject to our superintending control.[10] The continued exercise of power by the respondent-judge clearly violates the fundamental rights of the petitioners. They are without a legal remedy that is as adequate as that of prohibition.[11]

We assume original jurisdiction and issue a writ prohibiting the respondent-judge from treating as effective and enforcing by contempt the adoption decree by which, without prior notice [12] to the petitioners, the divorced maternal grandfather became the adoptive parent of his orphaned offspring.

IRWIN, C. J., BARNES, V. C. J., and HODGES, LAVENDER, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

---

**8.** Art. 2 § 7, Okl. Const.; XIVth Amend., U.S. Const.; *Armstrong v. Manzo*, 380 U.S. 545, 550–552, 85 S.Ct. 1187, 1190–1191, 14 L.Ed.2d 62, 65–67 [1965]; *Application of Tubbs*, Okl., 620 P.2d 384, 385–386 [1980]. "A state cannot invest itself with, and exercise through its courts, judicial jurisdiction over a person in a proceeding which may directly and adversely affect his legally protected interests, unless a method of notification is employed which is reasonably calculated to give him knowledge at a meaningful time and in a meaningful manner of the attempted exercise of jurisdiction and an opportunity to be heard." *Bomford v. Socony Mobil Oil Co.*, Okl., 440 P.2d 713, 718 [1968].

**9.** *Application of Tubbs*, supra note 8.

**10.** *Powell v. Seay*, Okl., 553 P.2d 161, 164 [1976].

**11.** "Due process is violated by the mere act of exercising judicial power upon process not reasonably calculated to apprise the defendant of the pendency of an action." *Bomford v. Socony Mobil Oil Co.*, supra note 8 at 719.

**12.** In the constitutional sense, notice and opportunity to be heard were the petitioners' due before the court could proceed to appoint a guardian ad litem and invest him with consent-giving powers. *Armstrong v. Manzo*, supra note 8.