**In the Matter of the ADOPTION OF G.D.L., A Minor Child.**

No. 66492.

Supreme Court of Oklahoma.

Nov. 24, 1987.

Andrew W. Lester, Paul K. Woodward, Long, Ford, Lester & Brown, Enid, for appellant.

Jean Messecar Caldwell, Tulsa, for appellees.

SUMMERS, Justice.

Both the unwed mother and father of G.D.L. consented to her adoption by petitioners, an unnamed couple, who filed their petition to adopt. The maternal grandmother sought to intervene to secure visitation rights in the event an adoption is granted by the court, or, in the alternative, to adopt the child herself. The district court denied grandmother's motion to intervene, finding that the grandmother had no standing to intervene because there is no specific statutory authority allowing such action. From this ruling grandmother appeals.

## I.

### DOES A GRANDPARENT HAVE STANDING TO INTERVENE IN AN ADOPTION TO THIRD PARTIES IN ORDER TO ESTABLISH VISITATION WITH HER GRANDCHILD

■ We hold that she does not. Grandmother's only authority in support of her proposition is *In re: Bomgardner*, 711 P.2d 92 (Okl.1985), in which we stated:

"Equity recognizes—independent of statute—the grandparent's claim to the companionship of their grandchild." Id at 97.

"We hold that the maternal grandparents do have standing and—both under the statute and in equity—to assert a claim for access and companionship of their offspring." Id.

*Bomgardner* involved an interpretation of 10 O.S.1981 § 5. The issue was whether a grandparent's claim for access and companionship of their deceased daughter's offspring, which arose before it became remedial under 10 O.S.1981 § 5, was actionable under that section. This Court answered in the affirmative, and held that because the Legislature intended for the 1981 amendment to prevent the off-spring's alienation from the grandparents when one parent is deceased, the district court erred in denying the claim by its judgment on the father's demurrer to the grandparents' petition.

Title 10 O.S.Supp.1984 § 5[1] deals with grandparental visitation rights. It has gone through several phases since its first enactment in 1971, at which time grandparents were first given standing to assert a claim for access to their grandchildren when one or both parents was deceased. In 1978 § 5 was amended to provide for grandparental claims to access when "both parents are deceased or if they are divorced". This amendment also provided access if one natural parent was deceased and the surviving natural parent remarried, and stated that any subsequent adoption proceedings will not terminate the grandparental rights of the decedent's parents unless so ordered by the trial court. Section 5 was again amended in 1981 to provide for visitation "when one or both parents were deceased or if they are divorced," "one" having been omitted from the 1978 amendment.

The 1984 edition of 10 O.S. § 5 covers grandparental visitation rights in three separate situations: (1) When one or both parents of a minor child are deceased or if said parents are divorced: (2) Where one natural parent is deceased and the surviving natural parent remarries, and (3) Where the parental rights of one parent has been terminated and the child is in the custody of the other natural parent. The latter two situations provide for grandparental visitation in the event of subsequent adoptions, provided, of course, that the "best interest" tests are met.

Whereas 10 O.S.Supp.1984 § 5 deals with grandparental visitation rights generally

1. 10 O.S.Supp.1984 § 5

A. If one or both parents of an unmarried minor child are deceased or if said parents are divorced, any grandparent who is the parent of the deceased or divorced parent of the child shall have reasonable rights of visitation to the child if the district court deems it to be in the best interest of the child. Upon the filing of a verified application for said visitation rights by said grandparent, the district courts are vested with jurisdiction to enforce said visitation rights and make orders relative thereto. As ordered by the court, notice of said rights shall be given to the person or parents having custody of said child.

B. If one natural parent is deceased and the surviving natural parents remarries, any subsequent adoption proceedings shall not terminate any court-granted grandparental rights belonging to the parents of the deceased natural parents unless said termination is ordered by the court after opportunity to be heard, and the district court deems it to be in the best interest of the child.

C. If the parental rights of one parent have been terminated and the child is in the custody of the other natural parent, any person who is the parent of the person whose parental rights have been terminated may be given reasonable rights of visitation where the court determines that a previous grandparental relationship has existed between the grandparents and the child and the district court determines it to be in the best interest of the child. Any subsequent adoption proceedings shall not terminate any court-granted grandparental visitation unless the district court determines it to be in the best interest of the child.

and adoption proceedings where the surviving or non-terminated parent remarries, 10 O.S.1981 § 60.16(3)[2] deals specifically with grandparental rights in other adoption cases. Adding our punctuation (which we conclude to be that intended by the legislature) it provides that:

   A. When:
      (1) one or both natural parents are deceased, or
      (2) if they are divorced, and
   B. a consent to adoption is executed to
      (1) a blood relative, or
      (2) a natural parent's spouse,
   C. then the grandparents may be given visitation rights.

Comparison of the facts of our case to the statute do not favor the grandmother's application. The proposed adoptive parents are strangers to the child's blood. In § 5 Subdivision A. does not apply because the parents are neither divorced nor deceased. Neither subdivision B nor C applies because there has been no adoption proceeding filed by a surviving or non-terminated parent. Section 60.16(3) does not apply because the consent for adoption was not executed in favor of a blood relative or natural parent's spouse. Grandmother has recognized her plight, and seeks standing solely in equity, outside any statutory shelter.

We note there is presently a thread of consistency woven through the statutes. Both §§ 5 and 60.16(3) allow grandparent's visitation in adoption cases *only when the adoption results in the child remaining with at least one blood relative as a parent.*

*Leake v. Grissom,* 614 P.2d 1107 (Okl. 1980) was decided when the statute (§ 60.- 13(3)) only allowed grandparental visitation when the consent for adoption was given to a blood relative, not the mother's new husband. In denying grandparent's visitation we said:

"Where the adoption statute accords the adopted child the status of a natural child, the court, in the absence of statutory authority to the contrary may not grant visitation privileges." Id at 1110.

Two dissenting Justices noticed what they then perceived to be the legislative "thread" referred to above, and said:

"Those statutes [§§ 5 and 60.16(3)] should be construed together in light of the objective doubtless intended by the Legislature.... The post decree adoption was not intended as a barrier (to grandparental visitation) so long as the child remained with at least one blood relative as a parent. The obvious intent of the cited enactments, read together, was to prevent alienation from grandparents in all those instances in which the post-death or post-decree adoption has not placed the offspring beyond the circle of the *child's consanguinity.*" Id, dissenting opinion at 1111.

In 1981 the legislature accommodated the dissenters by amending § 60.16(3) to its present form, allowing visitation when the consent was executed in favor of the natural parent's new spouse.

This Court has consistently refused to extend grandparental rights in adoption cases beyond those specified by the legislature. In *Matter of Fox,* 567 P.2d 985 (Okl. 1977), decided before the legislature had provided any specific grandparental rights in adoption cases, we said:

"The purpose of adoption proceedings is to terminate all legal relationships in rights between a minor child and its natural parents and to establish these rights

---

**2.** 10 O.S.1981 § 60.16(3)

When one or both natural parents of a child are deceased or if they are divorced and a consent to adoption is executed to a blood relative, or to a natural parent's spouse, any grandparents, who is the parent of the child's deceased or divorced natural parents, may be given reasonable rights of visitation to the child, in accordance with the provisions of Section 5 of this title, provided the court deems it to be in the best interests of the child. The district courts are vested with jurisdiction to enforce such visitation rights and make orders relative thereto, upon the filing of a verified application for such visitation rights. Notice as ordered by the court shall be given to the person or parents having custody of said child and the venue of such action shall be in the county of the residence of such person or parent, provided, however, that this section shall not apply to children born out of wedlock.

in the adoptive parents.... A decree of adoption severs the child from its own family tree and engrafts it upon that of the new parentage. Public policy requires the severance of all old ties.... Where the adoption statute accords the adopted child the status of a natural child and frees the natural parents of legal obligations toward it a court in granting an adoption decree is without authority to include a grant of visitation privileges to the parent or members of the parent's family in the decree." (Citations omitted). Id at 986, 987.

See also *Matter of K.S.*, 654 P.2d 1050 (Okl.1982); *Julien v. Gardner*, 628 P.2d 1165 (Okl.1981).

The grandmother urges that we have departed this position in *Bomgardner*, and rests her case. We disagree. Our response is twofold: First, in *Bomgardner* the child remained in the custody of its father; here third parties who are blood strangers seek custody through adoption. Second, this *is* an adoption case, controlled by 10 O.S.1981 § 60.16(3), whereas *Bomgardner* involved simple visitation with children in the custody of their natural father.

We have held that matters relating to adoption are wholly within the control of the legislature, *In re Captain's Estate*, 191 Okl. 463, 130 P.2d 1002 (1942), and that adoption statutes must be strictly construed. *Matter of Adoption of C.M.G.*, 656 P.2d 262 (Okl.1982). When the adoption takes the child out of its "circle of consanguinity" there is sound reasoning in not encumbering each prospective adoption with ties to the old family. Such ties and concessions must be allowed, if at all, at the sufferance of the new family, which now has all the responsibilities for the child. Under these circumstances compassion for the grandparent "must give way to the new family union which the law has created. The severance by adoption must be complete." *In the Matter of Fox*, supra, P. 1052. The legislature has wisely

limited grandparental visitation in adoptions to cases where the child still has blood ties to the new parents, and we do not enlarge upon their wisdom. The order of the trial court denying the grandmother standing to establish visitation is affirmed.

## II.

### DOES A GRANDPARENT HAVE STANDING TO INTERVENE IN THE ADOPTION CASE IN ORDER TO PURSUE HER OWN ADOPTION OF THE GRANDCHILD?

■ Grandmother's second proposition is that if under *Bomgardner*, supra, she may in equity pursue visitation, then it follows that she may seek the adoption of the grandchild in equity as well. She cites no other authority for this proposition. Trial court also denied this aspect of her petition in intervention. Again, we affirm.

12 O.S.Supp.1984 § 2024 governs intervention and provides in pertinent part:

A. INTERVENTION OF RIGHT

Upon timely application anyone shall be permitted to intervene in an action:

1. When a statute confers an unconditional right to intervene; or

2. When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest.

Grandmother, not eligible for court created visitation and not entitled to notice of the adoption proceedings[3] has no "interest" in the action entitling her to intervention as a matter of right to pursue her own adoption of the child. See *Muggenborg v. Kessley*, 630 P.2d 1276 (Okl.1981).

■ The duty of the trial court in adoption matters is to determine whether (1) the petitioners are eligible to adopt the child, (2) the child is eligible for adoption, and (3) the adoption would be in the child's best interest. *State ex rel. Dept. of Inst., Soc.*

---

**3.** 10 O.S.1981 §§ 60.6, 60.7 do not require consent of or notice to grandparents as such in adoption proceedings.

& R. Serv. v. Griffis, 545 P.2d 763 (Okl. 1976). In Barriner v. Stedman, 580 P.2d 514, (Okl.1978) we said:

> "An adoption procedure, while guided by a consideration of the best interest of the child, was not intended, nor statutorily required to weigh every competing interest among various families. To do so would create conflicts which would frustrate the purpose of adoption in the first place."

The natural parents have executed their consents to adoption in this case, giving up their parental rights in favor of the third party petitioners. The only petition properly before the court was that of the petitioners, and the court was bound to grant or not grant that petition for adoption, under the standards of Griffis, supra.

The trial court committed no error in dismissing the grandmother's petition to intervene for the purpose of adopting the child.

DOOLIN, C.J., HARGRAVE, V.C.J., and LAVENDER, SIMMS and WILSON JJ., concur.

HODGES and OPALA, JJ., concur in part I; dissent from part II.

KAUGER, J., concurs in part and dissents in part.