2004 OK CIV APP 31

**In the matter of the ADOPTION OF D.D.B. and M.L.R.H., minor children.**

**Carla Kaye Jonas and R.B. Jonas, Petitioners/Appellants,**

v.

**Department of Human Services, Jimmy Hill, and Chi Hill, Respondents/Appellees.**

**No. 99,160.**

Court of Civil Appeals of Oklahoma, Division No. 2.

March 9, 2004.

George Walters, Broken Bow, OK, for Minor Children.

Maria Tasi Blakely, Hugo, OK, for Petitioners/Appellants.

Charles Lee Waters, General Counsel, Bonnie Clift, Assistant General Counsel Department of Human Services, Oklahoma City, OK, for Respondent/Appellee Department of Human Services.

Thomas Hadley, Antlers, OK, for Respondents/Appellees Jimmy Hill and Chi Hill.[1]

Opinion by TOM COLBERT, Chief Judge.

¶1 Carla Kaye Jonas and R.B. Jonas appeal from the trial court's order dismissing their petition to adopt Mrs. Jonas's grandchildren. The issue on appeal is whether the court erred in concluding that it did not have jurisdiction to consider the Jonases' petition. Upon review of the record and applicable law, we conclude that it did err and reverse and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

¶2 D.D.B., born October 20, 1999, and M.L.R.H., born August 21, 2001, are the biological sons of Mrs. Jonas's daughter, Kimberly Barnes. On February 14, 2001, D.D.B. was placed in the custody of the Department of Human Services [DHS] when law enforcement officers observed bruises on him. He was adjudicated deprived on April 16, 2001, and placed in Mrs. Jonas's custody. On May 17, 2001, the court returned D.D.B. to his mother under DHS supervision.

¶3 On January 7, 2002, following M.L.R.H.'s birth, law enforcement officers again observed bruises on D.D.B. The court entered an emergency order placing both children in DHS custody, but their mother had already called Mrs. Jonas, who came to Oklahoma the same day and took her daugh-

---

1. Counsel for Respondents/Appellees Jimmy Hill and Chi Hill withdrew after filing their Response Brief.

ter and both children to her home in Texas. Mrs. Jonas returned the children on January 9, 2002, when she learned of the court's emergency order.[2]

¶ 4 DHS placed the children in foster care with Melvin and Teresa Harper. The court terminated the parental rights of D.D.B.'s biological father on July 19, 2002, and terminated the parental rights of M.L.R.H.'s biological father on July 30, 2002. Kimberly Barnes relinquished her parental rights on September 13, 2002.

¶ 5 On September 27, 2002, the Jonases, who had consistently sought their custody, filed a petition to adopt the children. On October 21, 2002, Jimmy and Chi Hill (M.L.R.H.'s paternal uncle and aunt) filed an objection to the Jonases' petition and their own application to adopt. On November 4, 2002, the foster parents also filed a petition to adopt. The district court consolidated all three petitions.

¶ 6 DHS recommended adoption of the children by the Hills and refused to consent to adoption by the Jonases. When the trial judge became aware of DHS's position, he suggested that it file a motion to dismiss the Jonases' petition. Both DHS and the Hills filed motions to dismiss and the court dismissed the Jonases' adoption petition on April 21, 2003. The Jonases appeal.[3]

## STANDARD OF REVIEW

¶ 7 We review *de novo* a district court's order to dismiss a case. *Miller v. Miller*, 1998 OK 24, ¶ 15, 956 P.2d 887, 894. We will not sustain a motion to dismiss for failure to state a claim upon which relief can be granted "unless it should appear without doubt that the plaintiff can prove no set of facts in support of the claim for relief." *Id.* Also, a petition should generally be dismissed only "for lack of any cognizable legal theory or for insufficient facts under a cognizable legal theory." *Id.; see also In re Adoption*

*of I.D.G.*, 2002 OK CIV APP 22, ¶ 9, 42 P.3d 303, 306.

## DISCUSSION

¶ 8 The primary concern in an adoption proceeding is whether the adoption will promote the child's best interests. *In re Adoption of C.D.M.*, 2001 OK 103, ¶ 23, 39 P.3d 802, 811. The trial court must determine "whether (1) the petitioners are eligible to adopt the child, (2) the child is eligible for adoption, and (3) the adoption would be in the child's best interest." *In re Adoption of G.D.L.*, 1987 OK 115, ¶ 17, 747 P.2d 282, 285 (citation omitted). Adoption statutes are strictly construed, because adoption is "wholly within the control of the legislature." *Id.* at ¶ 13, 747 P.2d at 285 (citation omitted); *see also I.D.G.*, 2002 OK CIV APP 22, ¶ 10, 42 P.3d at 306.

¶ 9 DHS's position is that, because it has permanent custody of D.D.B. and M.L.R.H., it alone has the authority to consent to their adoption. DHS relies on both statutory and case law to support its argument. Indeed, when parental rights are terminated, the court *shall*, by statute, vest in DHS the authority to consent to the child's adoption. 10 O.S.2001 § 7003–5.5(I)(3). The question confronting this Court is whether DHS is the final arbiter of the "best interests" of a child in permanent DHS custody or whether the district court has the power to review DHS's decision to refuse consent to an adoption.

¶ 10 DHS's position is bolstered by a recent opinion by another panel of this Court, *In re E.C.B.*, 2003 OK CIV APP 5, 62 P.3d 789, *cert. denied* (Jan. 07, 2003). In *E.C.B.*, an infant was placed in permanent DHS custody after her mother's and father's parental rights were terminated. A great-aunt and uncle, who lived in California and had never met her, filed a petition to adopt. Although a completed home study recommended that they be allowed to adopt the child, DHS refused to consent because it was concerned

---

**2.** According to DHS, neither Mrs. Jonas nor the children's mother sought medical attention for D.D.B. or informed DHS of his condition. The record contains no evidence of the extent of D.D.B.'s injuries beyond bruising, but Kimberly Barnes was convicted of Permitting Abuse to a

Child and M.L.R.H.'s biological father was convicted of Permitting Injury to a Child.

**3.** On June 6, 2003, the Supreme Court issued an order staying further proceedings in the district court pending the resolution of this appeal.

that the petitioners might allow visitation by the abusive biological family and the child had already developed a strong bond with her foster parents, who also wanted to adopt her. After the petitioners pursued DHS's internal review process without success, they filed a petition to adopt without DHS's approval.

¶ 11 The district court dismissed their petition, finding it lacked jurisdiction without DHS's consent. On appeal, the Court of Civil Appeals concluded that there was no statutory vehicle "by which to challenge DHS's decision to grant or withhold consent to a particular application for adoption, nor any grounds to override DHS's decision to withhold its consent to adopt." *Id.* at ¶ 11, 62 P.3d at 792.

■ ¶ 12 While we agree with the result in *E.C.B.*, we cannot agree with that last statement, particularly under the circumstances confronting us here. DHS "may not operate beyond the scrutiny of judicial review." *State ex rel. Dep't of Insts., Soc. & Rehabilitative Servs. v. Griffis*, 1975 OK 164, ¶ 23, 545 P.2d 763, 768. In *Griffis*, foster parents of long duration petitioned to adopt their foster child without DHS consent. Like the children here, the child in *Griffis* was in permanent DHS custody and the court had given DHS authority to consent to her adoption. *Id.* at ¶ 5, 545 P.2d at 764. Then, as now, DHS argued that its refusal to consent to the adoption deprived the court of jurisdiction to consider the foster parents' petition to adopt. The Supreme Court refused DHS's argument, saying the district court must determine whether the adoption is in the best interests of the child. *Id.* at ¶ 20, 545 P.2d at 766.

> [W]e cannot help but observe that the legislature has provided that in certain compelling situations a child may be adopted without the consent of his natural parents. 10 O.S. Supp.1974 § 60.06 [now 10 O.S.2001 § 7505–4.2]. If [DHS's] position were upheld, it would lead to the ultimate conclusion that [DHS] can always deprive a court of jurisdiction in an adoption proceeding involving a child judicially placed in [DHS's] custody while the natural parent cannot. We do not believe that

the legislature intended to place the relationship of [DHS] and children entrusted to its custody on a higher plane than the law accords the relationship existing between natural parents and their children. *Id.* at ¶ 22, 545 P.2d at 767. The Court stated, "The adoption statutes clearly do not permit any interpretation which would derogate the constitutionally vested jurisdiction of the trial judge and allow a delegation of this decision making power to [DHS] or to any other third party." *Id.* at ¶ 20, 545 P.2d at 766.

¶ 13 Although the Children's Code, 10 O.S. 2001 & Supp.2002 §§ 7001–1.1—7007–1.8, outlining DHS's authority in these cases, has been amended since *Griffis* was decided, the most recent amendment has made the court's continuing jurisdiction more, not less, clear. For example, DHS relies most heavily on section 7003–5.5(I), which now provides, in part:

> If the court terminates the rights of a parent and places the child with an individual or agency, the court may invest in such individual or agency authority to consent to the adoption of the child. Provided, that where the court places the child with [DHS], it shall vest [DHS] with authority to place the child and, upon notice to the court that an adoption petition has been filed concerning such child, invest [DHS] with authority to consent to the adoption of the child, and the jurisdiction of the committing court shall terminate *upon final decree of adoption.*

10 O.S.2001 § 7003–5.5 (emphasis added). In 1975, when *Griffis* was written, section 7003–5.5 was numbered section 1116(b) and read in part:

> If the court terminates the rights of a parent and commits the child to an individual or agency, the court may invest in such individual or agency authority to consent to the adoption of the child.

10 O.S.1971 § 1116(b). In 1977, section 1116(b) was amended to provide:

> If the court terminates the rights of a parent and commits the child to an individual or agency, the court may invest in such individual or agency authority to consent

to the adoption of the child. Provided, that *where the court commits the child to [DHS] it shall vest [DHS] with authority to place the child and upon notice to the court that an adoption petition has been filed concerning said child, invest [DHS] with authority to consent to the adoption of the child, and the jurisdiction of the committing court shall terminate.*

10 O.S. Supp.1977 § 1116(b) (emphasis added). Had the statute remained as amended in 1977, DHS's argument would be stronger, as it provided that the court's jurisdiction ended upon vesting consent authority with DHS. The statute did not, however, remain the same and the 1997 amendment, providing that the court's jurisdiction would terminate *upon the final decree of adoption,* reinforces the court's continuing supervisory role until the adoption is completed.

¶ 14 Other facets of the Children's Code support our conclusion. For example, in section 7003–8.1, dealing with placement, the court's continuing role is clearly contemplated when DHS is making placement decisions for adoption. In two specific instances, the court's role is paramount:

A prospective adoptive parent ... may be an approved placement regardless of whether such parent ... has been convicted of any of the felony offenses specified by division (1) of subparagraph a of this paragraph, if an evaluation has been made *and accepted by the court* ....

10 O.S.2001 § 7003–8.1(D)(2)(b) (emphasis added). Further:

In addition, prior to placing a child in the custody of an individual, *the court shall inquire* as to whether the individual has been previously convicted of any other felony or a relevant misdemeanor or has any felony or relevant misdemeanor charges pending.

10 O.S.2001 § 7003–8.1(E)(2) (emphasis added). The current Adoption Code, 10 O.S. 2001 & Supp.2002 §§ 7501–1.1—7511–1.5, also clearly contemplates the court's continuing supervisory role. For example, the court may waive the required home study, because, *"in this entire matter of investigation, the court is specifically authorized to exercise judicial knowledge and discretion."* 10 O.S. 2001 § 7505–5.3(A)(1) (emphasis added). Further:

A prospective adoptive parent may be an approved placement regardless of whether such parent has been convicted of any of the felony offenses specified ... if an evaluation has been made and *accepted by the court. ...*

10 O.S.2001 § 7505–6.3(G)(2) (emphasis added).

¶ 15 Our analysis of the Children's Code and the Adoption Code directs our conclusion. We reject DHS's position that it can deprive the district court of jurisdiction in this matter by refusing to consent to this adoption. The Supreme Court has consistently recognized the district court's continuing authority to review DHS decisions. *State ex rel. Dep't of Human Servs. v. Colclazier,* 1997 OK 134, 950 P.2d 824.[4]

¶ 16 DHS, nevertheless, argues that Mrs. Jonas has no legally protectable interest here, arguing, without using the term, that she lacks standing. We must disagree. In *Muggenborg v. Kessler,* 1981 OK 66, ¶ 7, 630 P.2d 1276, 1278, the Court considered a dispute between surviving grandparents when both parents were dead and one grandfather had adopted the children without any notice to the other grandparents. The Court observed that grandparents had a constitutional right to notice and an opportunity to

---

**4.** In *State ex rel. Department of Human Services v. Colclazier,* 1997 OK 134, 950 P.2d 824, the Supreme Court affirmed the district court's authority to reject DHS's foster care placement, although it did not address whether the court had the authority to direct DHS to place a child in a specific foster home. *Id.* at n. 5, 950 P.2d 824. Unquestionably, the Court implied that the district court's direct supervisory power changed or perhaps ceased once it placed permanent custody of a child with DHS, but the implication was not altogether clear, since the Court also included the review power over the placement of children in permanent DHS custody in its list setting forth the nature of the "court's continuing authority over children adjudicated deprived." *Id.* at ¶ 10, 950 P.2d at 828. Further, because the precise issue we consider here was not before the Court in *Colclazier,* we cannot assume that it intended to overrule its earlier cases directly on point.

be heard when the parental rights no longer existed. "When both parents are either dead *or their parental rights have been severed,* a grandparent, although not a natural guardian, has standing to claim custody of his offspring." *Id.* (footnotes omitted) (emphasis added).[5]

¶ 17 DHS's reliance on *In re Adoption of G.D.L.,* 1987 OK 115, 747 P.2d 282, is misplaced because it is factually distinguishable. *G.D.L.* dealt with a grandmother's quest for visitation with or adoption of her grandchild where her daughter was relinquishing her parental rights in favor of an unrelated adoptive family. Unlike the situation here, the child's mother retained control over her placement. The court held that, under those circumstances, the grandmother lacked standing to demand visitation and observed merely that she had failed to present any authority in support of her claim of adoption. *Id.* at ¶¶ 13–14, 747 P.2d at 285. Unlike the situation in *G.D.L.,* Mrs. Jonas's interest here has arisen *because* her daughter's parental rights have been terminated. *See Muggenborg,* 1981 OK 66, ¶ 7, 630 P.2d at 1278. Her standing, however, is of little use if she is denied the opportunity to present an alternative (in the form of her own petition to adopt) when she objects to DHS's placement decision.

■■■■ ¶ 18 We are left, then, with this. "It is the duty of the trial court in adoption matters to determine whether the adoption would be in the child's best interests." *In re Adoption of C.D.M.,* 2001 OK 103, ¶ 23, 39 P.3d 802, 811 (citing *Griffis,* 1975 OK 164, ¶ 20, 545 P.2d at 766). Further, "[t]he adoption statutes ... do not permit any interpretation which would derogate the constitutionally vested jurisdiction of the trial judge and allow a delegation of this decision making power to [DHS]." *Griffis,* 1975 OK 164, ¶ 20, 545 P.2d at 766. Even in the administrative realm of limited appellate procedures, there is always jurisdiction to review "a constitutional question, inadequate administrative relief, and threatened or impending irreparable

injury." *Johnson v. Bd. of Governors of Registered Dentists,* 1996 OK 41, ¶ 13, 913 P.2d 1339, 1344. Even without reaching the question of whether Mrs. Jonas, as a grandmother, has a constitutional right to be considered as an adoptive parent in this situation, we hold that DHS's decision, if taken without the possibility of court review, indeed constitutes threatened or impending irreparable injury to the grandmother and the children who have an existing relationship with the grandmother.

¶ 19 DHS has had the opportunity to present its allegations supporting its decision to refuse to consent to the Jonases' adoption of Mrs. Jonas's grandchildren. Even in its appellate brief, DHS set forth, with some specificity, the reasons for its decision. DHS implicitly acknowledged the importance of the facts in its motion to dismiss when it argued:

> As long as it is determined that [DHS] performed its statutory duties properly *and there is no evidence that [its] placement recommendation is contrary to the child's best interest,* it is not for the adoption court to weigh the qualifications between prospective adoptive parents.

(Emphasis added.) The record before this Court, however, contains no evidence.

¶ 20 The pattern of this case is troubling. DHS has allowed the Hills to have extended visitation with these children out of state in their home, while the Jonases have apparently been permitted only some limited and supervised visitation. Further, although the propriety of that order is not before this court at this time, the Jonases assert that the trial court's refusal to grant them custody of the children is not documented in the record as required by 10 O.S.2001 § 7003–5.5(C)(1)(a); *see also* 10 O.S.2001 § 7004–1.5(B)(1)(b). We cannot determine the accuracy of that statement based on the record before us, but if it is true, it is a further indication that Mrs. Jonas, in particular, has not had the process due her. The record we do have leads to the conclusion that the Hills

**5.** This situation is distinguishable from that considered in *In re Adoption of I.D.G.,* 2002 OK CIV APP 22, 42 P.3d 303, which held that former foster parents, whose ties with the child arose out of their contractual relationship with DHS, lacked standing to pursue an adoption without DHS consent in a proceeding separate from the parental rights termination proceeding.

have been encouraged to establish a greater bond with the children to the detriment of the Jonases, despite the fact that the record contains no evidence to support DHS's decision.

¶ 21 The Jonases have had no opportunity to present their evidence. The trial court cannot conclude that adoption by the Hills is in the children's best interests if it does not consider all of the evidence available to it. It erred, therefore, in concluding that it did not have jurisdiction to consider the Jonases' adoption petition.

## CONCLUSION

¶ 22 The only question before us is whether the trial court had jurisdiction to consider a grandmother's petition to adopt over DHS's objection. We conclude that it did. The grandmother's petition to adopt may not be dismissed as a matter of law and she is entitled to a hearing at which she can present evidence.

 ¶ 23 We take no position on whether the trial court should ultimately grant the Jonases' petition to adopt. Though there is a statutory preference that children be placed with their grandparents or other blood relatives, the preference is clearly subordinate to the best interests of the child.[6] 10 O.S. Supp.2003 § 21.1(A). DHS's refusal to consent to the Jonases' adoption of the children is a significant factor that the court should weigh accordingly, but DHS cannot deprive the court of jurisdiction to consider their petition.

We are of the opinion and so hold that [DHS's] refusal to consent to [the children's] adoption by the [petitioners] does not impair the jurisdiction of the district court to fully hear and determine the matter of petition filed....

Upon hearing, [the trial court] has the power and the duty in this case, as with all other adoption actions, to determine whether the evidence supports the allegations of the petition. Specifically, whether under the laws of Oklahoma the [petitioners] are indeed persons who are eligible to

adopt a child and whether this child is indeed one who is eligible to be adopted. If these allegations are borne out by the evidence, [the trial court] must then determine whether this proposed adoption would promote [the children's] best interests. In making this decision due weight should be accorded all the evidence concerning this child and these prospective adoption parents, including the refusal of [DHS] to consent thereto and the reasons propounded for that refusal.

*Griffis,* 1975 OK 164, ¶ 25–26, 545 P.2d at 768. We cannot say it better.

¶ 24 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

REIF, P.J., concurs, and RAPP, J., concurs specially.

RAPP, J, specially concurring:

¶ 1 I concur specially to note that it is reasonably understood that the judiciary is the final arbiter of whether the adoption of a child is in that "child's best interest." This function is solely and exclusively within the jurisdiction of the judicial branch of the government.

¶ 2 DHS is an administrative agency with a statutory right to consent or withhold consent to an adoption. The adoption is then subject to approval by the judiciary upon a finding of the child's best interest. When DHS exercises its consent role, it must do so in accordance with clearly defined criteria, findings, and conclusions. Otherwise, the agency's action becomes a purely arbitrary act outside the authority of an administrative agency. Administrative agencies must act in accord with statutes, defined rules, and regulations. The agencies must base their decisions on a reviewable record and, in cases such as this one, a record showing the child's best interest is served by the decision. The decisions must be unbiased and have a reasonable, rational basis supported by the record.

¶ 3 DHS has here, perhaps without recognizing the result of its position, attempted to

---

**6.** Ironically, the Hills rely on this statutory preference to explain and support DHS's decision to

prefer their adoption petition over that of the foster parents.

replace the judiciary in this matter and, for whatever reason, has assumed the powers and prerogatives of the judiciary. Obviously, such action and challenge by a state agency to a separate branch of the government cannot be condoned or approved. Moreover, DHS's position in this matter would relegate the judiciary to a mere platform to rubber stamp its decisions. In short, DHS has ignored the law, the clear intent of the Legislature, and the court's role in determining the best interest of the child.