2011 OK CIV APP 3

In the Matter of the ADOPTION OF G.F.E.G., a Minor Child,

Katherine E. and Ronald J. Clauser, Appellants,

v.

State of Oklahoma, Department of Human Services, Appellee.

No. 107,310.

Court of Civil Appeals of Oklahoma, Division No. 3.

Dec. 17, 2010.

O. Ronald McGee, Pawhuska, OK, for Appellants.

Catherine O'Leary, Tulsa, OK, for Appellee.

LARRY JOPLIN, Presiding Judge.

¶1 Appellants, Katherine and Ronald Clauser (Grandparents), are residents of the state of Delaware and filed a petition to adopt G.F.E.G., a petition to intervene and a motion for immediate custody after parental rights of the biological parents were terminated in a deprived proceeding in Osage County. Appellant, Katherine Clauser, is G.F.E.G.'s maternal grandmother and Ronald Clauser is her husband. The matters relating to G.F.E.G.'s adoption were trans-

ferred to an Osage County adoption docket. Grandparents' adoption petition was originally filed in the deprived matter on October 8, 2008. On January 13, 2009, in the adoption proceeding, the Oklahoma Department of Human Services (D.H.S. or the Department) filed a motion to dismiss Grandparents' adoption petition.[1] The trial court granted the D.H.S. motion, dismissing Grandparents' petition. This appeal results.

¶ 2 The appellate court reviews *de novo* the district court's order dismissing a case. *Miller v. Miller*, 1998 OK 24, ¶ 15, 956 P.2d 887, 894. Generally, a petition should be dismissed only "for lack of any cognizable legal theory or for insufficient facts under a cognizable legal theory." *Id.; see also In re Adoption of I.D.G.*, 2002 OK CIV APP 22, ¶ 9, 42 P.3d 303, 306; *In the Matter of the Adoption of D.D.B.*, 2004 OK CIV APP 31, ¶ 7, 87 P.3d 1112, 1114.

¶ 3 D.H.S. asserted Grandparents' adoption petition should be dismissed because Grandparents lacked standing to pursue the adoption, and Grandparents did not pursue intervention in the deprived proceeding and were now precluded from doing so in an adoption proceeding. D.H.S. also asserted that its approval was necessary in order for Grandparents to further pursue this adoption and the Department consented to adoption by the foster parents and objected to the adoption by Grandparents, thus making Grandparents ineligible to adopt. G.F.E.G. had been living with foster parents since

entering D.H.S. custody in 2006. In addition, D.H.S. asserted Grandparents, as residents of another state, were required to complete an ICPC (Interstate Compact on the Placement of Children) study and this had not been done, further compounding their lack of eligibility.[2]

¶ 4 D.H.S. argued the district court before which the adoption proceeding was pending could not exercise jurisdiction over the adoption, independent of the court's authority in the deprived action, citing *In the Matter of the Adoption of I.D.G.* and 10 O.S.2001 § 7002–1.1.[3] Then, arguing in favor of the predominance of the foster parents' petition to adopt, D.H.S. cited 10 O.S.2001 § 7003–5.6 h(B) & (C)[4], which states that if a child has been with a foster parent for at least a year, the court will give "great weight to the foster parent in the adoption consideration unless there is an existing loving emotional bond with a relative of the child by blood or marriage who is willing, able and eligible to adopt the child."

¶ 5 Grandparents responded, arguing they were eligible to adopt G.F.E.G. 10 O.S.2001 § 7503–1.1; 10 O.S.2001 § 21.1[5]. Grandparents also argued 10 O.S. § 21.1 granted Grandmother an adoption preference over the claims of foster parents and that D.H.S. could not simply eradicate a grandparent's legally protected interest in adopting one's own grandchild by consenting to another party's adoption petition and delaying

1. Foster parents, who filed their own adoption petition after Grandparents' petition was filed, also filed an objection to the Clauser's adoption petition and a motion to dismiss (on January 8, 2009). However, the district court's order addressed the D.H.S. motion to dismiss and not foster parents' motion. Another Osage County adoption case number was assigned for foster parents' adoption petition. As a result, G.F.E.G. is the subject of the deprived matter before Judge Boggs, the grandparents' adoption matter before Judge Gambill and the foster parents' adoption matter, filed under still another case number.

2. Appellants' counsel in argument before the district court stated Appellants' ICPC study was in fact complete and that delay in its completion was the fault of D.H.S. tactics to hinder Appellants' efforts to adopt G.F.E.G. However, in keeping with conducting a procedural issues only hearing, the study does not appear to have been

admitted into evidence below and is not part of the record on appeal, nor was testimony offered regarding the exact nature of D.H.S. actions to thwart Grandparents' adoption efforts.

3. 10 O.S.2001 § 7002–1.1 was amended and renumbered in 2009 and is now largely addressed by 10A O.S. Supp.2009 §§ 1–4–101 and 1–4–102; these sections have been amended again in 2010. *See* 2010 Okla. Sess. Laws Ch. 49 (S.B.1938).

4. 10 O.S.2001 § 7003–5.6h was amended and renumbered and is now addressed by 10A Supp. 2009 § 1–4–812(B).

5. 10 O.S.2001 § 21.1 was renumbered in 2009 and is now addressed in 43 O.S. Supp.2009 § 112.5. The newly numbered statute still lists a grandparent's custodial preference above that of foster parents, in a format like the original § 21.1.

Grandparents' ICPC home study. Grandparents argued the D.H.S. motion to dismiss is essentially an attempt to usurp the court's authority to determine the child's best interests.

¶ 6 The district court dismissed Grandparents' petition after a March 11, 2009 procedural hearing, at which all parties and the court acknowledged and agreed that no witnesses would be called and only the question of law regarding the court's jurisdiction was at issue. However, the court's subsequent order was not in keeping with the stated purpose of the hearing and according to the language in the order, the court based its decision to dismiss Grandparents' petition on evidence contained in the deprived proceeding file and a best interests analysis, neither of which were actually at issue according to the stated parameters of the March 11th hearing.[6]

¶ 7 Specifically, the court's subsequent order acknowledged the greater adoption priority of the grandparent under 10 O.S. § 21.1 and stated that D.H.S. must show either best interests of the child or a legal impediment operated to overcome the presumption of grandmother's priority to adopt. The court went on to say that the record in the deprived proceedings supported the Department's decision to consent to foster parents' adoption over grandmother's and that the Department's decision on a best interests test was precedential. Finally, the court reasoned that Grandparents could not use the adoption petition to, in effect, appeal the Department's 2006 placement of G.F.E.G., finding that any time Grandparents had to

object to the Department's choice of foster placement had passed.[7]

¶ 8 The error with the court's analysis is that the Department's decision to support the adoption petition of foster parents and not Grandmother was a decision based on the Department's opinion of the best interests of the child, and in concluding that the deprived record supported the Department's best interests opinion, the district court effectively made a best interests decision of its own in favor of the foster parents. However, the court did so without providing Grandmother any kind of evidentiary hearing to counter the Department's best interests allegations against her, because the agreed purpose of the March 11, 2009 hearing was to address the adoption court's jurisdiction and no evidence was taken.

■ ¶ 9 The Oklahoma Supreme Court determined that upon the death of a child's parents or the termination of parental rights, a grandparent has standing to claim custody of the parents' offspring and federal and state constitutional requirements demand grandparents receive notice and an opportunity to be heard. *Muggenborg v. Kessler,* 1981 OK 66, 630 P.2d 1276, 1278; *see also In the Matter of the Adoption of D.D.B.,* 2004 OK CIV APP 31, ¶ 16, 87 P.3d 1112, 1116–17. The district court's determination of the child's best interests, without providing Grandparents a forum to address the D.H.S. allegations, was error.

■ ¶ 10 The district court's finding that the Department's best interests opinion was

---

6. The deprived proceeding file was admitted into evidence without objection by any of the parties. However, the record shows Grandparents had no notice the court was going to use the file to support a best interests analysis, because the stated purpose of the hearing was to examine jurisdiction of the adoption court and ascertain the role the deprived court played in conferring that authority on the adoption court.

7. Trial court's June 11, 2009 order sustaining Department of Human Services motion to dismiss:
7. Petitioner Clauser requests that this Court review the determination of placing custody of the subject child within the custody of the Department at this late date. By virtue of statute, (10 O.S. Section 7003–5.5(I)(3)) the Department

then makes the determination of placement. At the point in time where the Department placed the child with Petitioners, Smith [foster parents], was the time that Petitioner Clauser should have availed herself of an appeal at that time in JD–2006–48 and not wait until the rights of the parents were severed and then wake up to the fact that the adoption should be commenced. Said Petitioner seeks an appeal of the decision of the Department by virtue of the filing of a Petition for Adoption. The Court chooses not at this time to go behind the decision of the Department contained in JD–2006–48 concerning placement of the child both as to permanency and for adoption for the reason that this Court is not the Judge assigned in JD–2006–48.

precedential was also erroneous. Precedent is something distinctly stronger than persuasive authority and implicates a sense of binding authority. A precedent is a rule to be departed from in only the most compelling of circumstances. *Sisk v. J.B. Hunt Transport, Inc.*, 2003 OK 69, 81 P.3d 55, 61 (regarding concept of stare decisis, only those precedents which are patently bad should be judicially corrected). The district court relied upon 10 O.S. Supp.2006 § 7003–5.5(I)(3) [8] and 10 O.S.2001 § 7503–2.1(D)(1) in support of its finding that D.H.S. had precedential authority to determine a child's best interests and thereby consent or withhold consent to adopt. But contrary to the court's reliance on these statutes, the Oklahoma Supreme Court determined "even so-called mandatory language of an adoption statute does not deprive the court of jurisdiction to determine an adoption petition where the best interests of the child are at stake." *In the Matter of the Adoption of M.J.S.*, 2007 OK 43, 162 P.3d 200, 208 n. 23. Contrary to the judge's statement in the appealed from order, the district court is not bound by precedent to the Department's adoption recommendation. *In re B.O.*, 2008 OK CIV APP 12, ¶ 9, 177 P.3d 584, 587. The trial court erred in relinquishing its own authority to make a best interests analysis, in deference to the Department's determination.

¶ 11 The appealed from order is also problematic, because the trial court misconstrued Grandparents' motion for immediate custody as an appeal of the 2006 placement of the child with foster parents. Then the court found that the time to appeal or question this 2006 placement "has long since passed." [9] In reading Grandparents' motion, it is apparent Grandparents' request is based on facts and the new goals of adoption placement as they existed in 2008 and not the reunification goals that existed in 2006, when G.F.E.G. was placed with the foster parents.[10] Grandparents specifically couched

---

8. Authority cited by the district court and Appellee, D.H.S., included § 7003–5.5(I)(3). This section was amended in 2009 and read as it did in the earlier 2006 supplement, but was relocated to subsection (J)(3) after the May 11, 2009 emergency statute amendments took effect. On May 21, 2009, § 7005–5.5 was further amended and renumbered (10A Supp.2009 § 1–4–706) and now reads, in part, as follows:

5. At the conclusion of the dispositional hearing, the court shall schedule the dates and times for periodic review and permanency hearings. B. 1. If the child is removed from the custody of the child's parent, the court or the Department of Human Services, as applicable, shall immediately consider concurrent permanency planning, and, when appropriate, develop a concurrent plan so that permanency may occur at the earliest opportunity. Consideration should be given so that if reunification fails or is delayed, the placement made is the best available placement to provide permanency for the child. 2. The court shall further: a. establish an initial permanency plan for the child, and b. determine if aggravated circumstances exist pursuant to Section 1–4–809 of this title and whether reunification services are appropriate for the child and the child's family. 3. When reunification with a parent or legal guardian is the permanency plan and concurrent planning is indicated, the court shall determine if efforts are being made to place the child in accord with the concurrent permanency plan, including whether appropriate in-state and out-of-state permanency placement options have been identified and pursued.

4. Every effort shall be made to place the child with a suitable relative of the child.
The previous version of this statute (10 O.S. Supp.2006 § 7003–5.5(I)(3)), in effect at the time of the March 2009 hearing, read as follows: 3. If the court terminates the rights of a parent and places the child with an individual or agency, the court may invest in such individual or agency authority to consent to the adoption of the child. Provided, that where the court places the child with the Department, it shall vest the Department with authority to place the child and, upon notice to the court that an adoption petition has been filed concerning such child, invest the Department with authority to consent to the adoption of the child, and jurisdiction of the committing court shall terminate upon final decree of adoption.

9. Item 8 in the district court's order reads as follows:

The motion to dismiss filed by the Department in the present posture of the cases [sic] should be sustained. Any time to question of [sic] the validity of the determination of the Department has long since passed.

10. The statute as it existed at the time of the hearing, 10 O.S. Supp.2006 § 7003–5.3(J), makes clear that "reunification" and "permanent placement" through a process such as adoption are two distinct objectives. Which one should be pursued is based on a number of factors and "a comprehensive assessment and evaluation of the child and family" in question. 10 O.S. Supp. 2006 § 7003–5.3(C) (current statute, as amended

their October 2008 request for immediate custody in terms of the termination of the parental rights and the fact the child was declared eligible for adoption. Despite the statements in the district court's order, Grandparents' motion was not an attack on or appeal of the child's 2006 placement with foster parents. Instead, Grandparents' motion was a response to the fact that the ultimate permanency goal changed and Grandparents asserted they were a better placement under the new set of circumstances, now that the child was eligible for adoption. We hold the trial court erred, failing to acknowledge the divergent goals of reunification versus permanent placement and in failing to address the issues as Grandparents raised them in their motion.

■ ¶ 12 The Department's contention that Grandparents did not proceed through the deprived action and therefore lacked standing to file their adoption petition is incorrect. The record demonstrates Grandparents did, in fact, file their motion to intervene, motion for immediate custody and petition for adoption on October 8, 2008 in the deprived matter, listing the deprived file number for purposes of each of these pleadings. The record indicates on November 12, 2008 with all parties present, including D.H.S.[11], Grandparents were granted a motion to intervene and the court presiding in the deprived matter allowed concurrent jurisdiction, wherein the judge in the deprived matter maintained the deprived proceeding and the adoption was sent to Judge Gambill's adoption docket, where the D.H.S. motion to dismiss was filed in January 2009 and ultimately granted. Both the attorney for the child and Judge Gambill commented the practice of separating the adoption proceeding from the deprived proceeding was common in Osage County. In any event, the record gives every indication that not only did Grandparents originally file their petition and other motions in the deprived matter, their adoption petition was effectively transferred to the adoption court proceeding by the judge presiding in the deprived matter.[12]

¶ 13 As a result, D.H.S.'s reliance on *Matter of I.D.G.* is misplaced. *I.D.G.* says:

Petitioners undoubtedly had standing to contest DHS's decision to remove I.D.G. from their home, but they do not have standing to pursue his adoption in a separate proceeding *initiated outside* of the deprived proceeding and after I.D.G. was removed from their home.

*In the Matter of the Adoption of I.D.G.*, 42 P.3d at 307 (emphasis added). The record available here indicates Grandparents initiated their petition for adoption within the deprived proceeding and, upon the orders of the judge in the deprived matter, they ended up before the adoption court. The record does not support D.H.S.'s contention that Grandparents pursued adoption *outside* the deprived matter.

¶ 14 We also note that 10 O.S.2001 § 7002–1.1(C)(1)–(3)[13], in effect at the time of the March 2009 hearing, provides that proceed-

in 2009, can be found at 10A Supp.2009 § 1–4–704(C)).

**11.** At the March 11, 2009 hearing, D.H.S. claimed Grandparents failed to properly notify D.H.S. of their adoption petition and motions. While Grandparents admitted they failed to send D.H.S. notice when the petition was filed, the record revealed that D.H.S. was not listed as a party in the deprived matter when Grandparents filed their petition. Notice of the petition was sent to the district attorney's office, which was listed as a party. D.H.S. eventually entered an appearance. The Department also participated in the January 7, 2009 proceeding in which the deprived court assigned the same guardian ad litem for the adoption proceedings, with the approval of all present and provided the adoption court did not object. D.H.S. is clearly entitled to notice of an adoption petition for a child under its custody and care, by virtue of 10 O.S. Supp. 2002 § 7003–7.1(C)(2), now addressed in 10A O.S. Supp.2009 § 1–7–101(C)(2). However, since D.H.S. was not a listed party, the district attorney was notified, D.H.S. did receive notice shortly after the petition was filed and was able to participate meaningfully in these proceedings, dismissal of Grandparents' petition for failure to provide notice to D.H.S. under these circumstances is unwarranted.

**12.** The record shows on January 7, 2009 the guardian ad litem appointed in the deprived matter was also appointed for purposes of the grandparents' adoption proceeding. This appointment was made by the judge in the deprived matter, on the condition that the judge presiding over the grandparents' adoption matter had no objection.

**13.** *See supra* note 3.

ings be consolidated in the event judges who have been assigned various components of a child's deprived, custody and/or adoption matters cannot agree on the procedure that should be followed. As a result, the statute does not suggest an adoption petition should be dismissed as was done here.[14]

¶ 15 The Oklahoma Supreme Court made clear that D.H.S. cannot use statutory provisions allowing D.H.S. to consent to an adoption as a means of usurping the court's authority to make a best interests determination. *In the Matter of the Adoption of M.J.S.*, 162 P.3d at 208; *see also In re B.O.*, 177 P.3d at 589 (it is the duty of the court to determine whether an adoption is in a child's best interests). It is the court's best interests analysis that must control and determine who will adopt a child and not a D.H.S. determination that preemptively prevents the court from properly evaluating a child's best interests. *Id.; see also State ex rel. Oklahoma Dep't Human Serv. v. Colclazier*, 1997 OK 134, 950 P.2d 824, 827–28 ("The district court's continuing authority over children adjudicated deprived is implicit in the scheme of the Children's Code ... Any order made pursuant to the Oklahoma Children's Code may be modified by the court at any time").

¶ 16 At its core, the Department's consent to adopt for foster parents and objection to adoption by Grandparents was a best interests argument, because the reasons for the Department's consent and corresponding objection were based to what the Department contends was in the child's best interests. To permit the Department's consent or lack thereof to have an effect on the grandmother's standing to pursue the adoption of her grandchild operates against the Supreme Court's pronouncement in *In the Matter of the Adoption of M.J.S.*, 162 P.3d at 208. Grandmother's standing itself is not dependent on the consent of D.H.S. *Muggenborg,*

630 P.2d at 1278. What credence the court ultimately chooses to give the Department's consent to adopt must be decided when the child's best interests are properly evaluated, after each of the interested parties has the opportunity to submit evidence in support of their respective positions, something which has not yet happened in this case.

¶ 17 We therefore hold the trial court erred when it dismissed Grandparents' adoption petition based on the best interests of the child, without providing Grandparents an opportunity to be heard on the best interests issue. The statutory authority conferred upon D.H.S. to consent to the adoption of a child does not relieve the court of its duty to make a best interests determination, nor is a D.H.S. decision with respect to a child's best interests afforded outcome determinative weight before the court. We further hold the trial court erred when it reviewed Grandparents' motion for immediate custody, petition for adoption and motion to intervene as an appeal of the 2006 decision to place the child with foster parents. Grandparents have standing to pursue the adoption of their grandchild, under the circumstances presented here. Because Grandparents' petition for adoption is based upon a cognizable legal theory and the Oklahoma Supreme Court determined grandparents in this situation have standing, the district court erred in dismissing Grandparents' adoption petition.

¶ 18 This cause is REVERSED AND REMANDED for further proceedings.

BELL, V.C.J., and MITCHELL, J., concur.

---

**14.** The new version of § 7002–1.1, now found at 10A O.S. Supp.2009 § 1–4–101 and recently amended in 2010 Okla. Sess. Laws Ch. 49 (S.B.

1938), provides for a stay in other proceedings pending notice to and the written consent of the judge presiding over the deprived matter.