Billy Dee WADE, Plaintiff in Error,

v.

Elmer Herle MANTOOTH and Kathleen N. Mantooth, Defendants in Error.

No. 41209.

Supreme Court of Oklahoma.

June 21, 1966.

Carloss Wadlington, Ada, for plaintiff in error.

Conner O. Montgomery, Durant, for defendants in error.

HALLEY, Chief Justice.

This action was commenced in the County Court of Bryan County when Kathleen Nabors Mantooth and her present husband, Elmer Herle Mantooth, filed their petition seeking the adoption of Mrs. Mantooth's child by a former marriage, Anthony Dee Wade, age 7. The natural father of the child, Billy Dee Wade, was the respondent in the action.

The pleadings in the case consisted of a Petition for Adoption, an Application for an Order Determining Child Eligible for Adoption Without Consent of Natural Father, Order Fixing Date for Hearing Petition for Adoption, Notice of Hearing Petition for Adoption, Affidavit of Mailing, Application for Continuance, Order for Investigation, Report of Investigator and Decree of Adoption. No question was rais-ed below as to the jurisdiction of the trial court, or the sufficiency of the notice.

The evidence developed at the trial showed that Mrs. Mantooth and the Respondent. Billy Dee Wade, were married on October 25, 1956, and that their son, Anthony Dee Wade, the subject of this matter, was born on November 24, 1957. Respondent and Mrs. Mantooth were divorced on October 26, 1959 in Carter County, with custody of the child being granted to her. The grounds. for the divorce were incompatability. Respondent was granted the right of reasonable visitation, and was also given the right to have the child for one weekend of each month. Child support payments were set at $60.00 per month. The decree of divorce had not been modified as of the time of the filing of the petition for adoption.

The evidence showed that the last support payment made by the Respondent was made on January 29, 1962, some 30 months prior to the filing of this action, and that Respondent owed the sum of $1,940.00 in back support payments as of the time of trial. Petitioners testified as to their present occupations, their income and family life, and that the child had been and was being supported by them, and that the relationship between the child and his prospective adoptive father was good. It was also shown that Respondent had not visited or attempted to visit the child since the latter part of 1961. A letter, dated March 31, 1964, from Mrs. Mantooth, addressed to Respondent, demanding payment of the back child support payments is a part of the record.

Respondent contended that his failure to contribute to the support of the child was. due to an arrangement that he had with Mrs. Mantooth that he could catch up on the payments when he finished school. That he re-enrolled in college the summer of 1963 and that he lacked one year in graduating. That he had real property and income during the time involved, and that he had been attempting to sell some of his. property or secure a loan on it in order to bring the child support payments current

ever since he received the letter from his former wife about the back payments. His evidence of an agreement with his former wife with respect to allowing him to catch up on the payments after he finished school was denied. Respondent also testified that he had been employed during a part of the 30 month period involved.

The provisions of Title 10, Oklahoma Statutes 1961, 60.7 and 60.8 apply to this case. Section 60.7 provides:

"Where a parent has been adjudged guilty of cruelty or extreme cruelty or gross neglect of duty and divorced or judicially deprived of the custody of a child on account of such cruelty or extreme cruelty or gross neglect of duty, or where a parent has wilfully failed, refused or neglected to contribute to the support of his child, as provided in the decree of divorce, for a period of one (1) year next preceding the filing of a petition for adoption of such child, it shall not be necessary to procure the consent of such parent to the adoption of said child."

■ Section 60.8 of the above mentioned Title sets out the procedure to be followed in filing the application for adoption without the consent of parent. A review of the pleadings in the trial court indicates a compliance with the procedural requirements of the sections of the statutes above mentioned.

■ Respondent contends that his failure to comply with the provisions of the divorce decree was not wilful, and that the demand letter written to him by his former wife indicated some kind of an arrangement of forbearance between them. This contention would seem to be specious. The letter written to him demands payment of past due child support monies within a certain period of time, and nothing more. Nothing can be inferred from the letter beyond that. During the 30 month non-support period, Respondent was possessed of real property of considerable value, as well as certain oil royalty. He attended college, supporting himself, during this period. He was gainfully employed during a portion of the time, and according to his own testimony used the income from his real property to increase his equity value in them.

■ One cannot escape the conclusion that Respondent's failure to contribute to the support of his child during this time was nothing but wilful.

■ The procedure followed in this matter by the trial court meets with our approval. This court in Davis v. Neely, Okl., 387 P.2d 494, stated:

"In our judgment it is not necessary to have a court of competent jurisdiction in a separate proceeding judicially deprive a parent of custody on account of extreme cruelty * * * or have a court judicially determine that the father has wilfully failed, refused and neglected to contribute to the support of his child as provided in the decree of divorce for the statutory period before a petition for adoption is filed. However, before entering a decree of adoption, it is necessary for the court to hear and determine why the consent of the natural parent is not necessary and in our opinion such may be determined by the adoption court which has the authority to determine the custody of any child living within the county and the power to issue a decree of adoption."

■■ This was the procedure followed herein. Such a determination is a question of fact for the trial court. See Davis v. Neely, above cited.

We have examined the evidence in detail upon which the trial court based its determination. The trial court's findings are not against the clear weight of the evidence.

Affirmed.