2007 OK 44

**In the Matter of the ADOPTION OF M.J.S., a minor child.**

**Nos. 104,240.**

Supreme Court of Oklahoma.

May 22, 2007.

31. The foster parents made similar allegations about failure to meet all or a portion of the conditions necessary for vacation of a judgment on the basis of fraud in the companion case. Our determination that the best interests of the child will override failure to demonstrate the due diligence factor in the request for a new trial is dispositive of these assertions.

32. Title 10 O.S.2001 § 7003–5.5(H)(3), see note 3, supra.

33. Granting of a new trial places the parties in a position to have the issues presented to a jury or court for final determination. Title 12 O.S.2001 § 651; *Lewis v. Conley,* 1957 OK 279, ¶ 0, 317 P.2d 761.

See also 2007 OK 43, 162 P.3d 200.

A. Craig Abrahamson, Tulsa, Oklahoma, For Appellants.

Kirsten Ingrid Bernhardt, Tulsa, Oklahoma, Charles Kevin Morrison, Oklahoma City, Oklahoma, Mark A. Zanotti, Tulsa, Oklahoma, For Appellees.

Catherine Ann O'Leary, Tulsa, Oklahoma, Jonna Sue Geitgey, Oklahoma City, Oklahoma, Yvonne Fisher Glick, Tulsa, Oklahoma, For Department of Human Services.

Julie Kaye McMahon, Tulsa County Public Defender, Tulsa, Oklahoma, For Child.

WATT, J.

¶ 1 The retained appeal, consolidated matter and companion case all involve the same adoption proceeding and will be resolved by a single opinion in the instant appeal.[1] The matters require resolution of two issues.[2]

---

1. See, *Murg v. Barnsdall Nursing Home*, 2005 OK 73, ¶ 1, 123 P.3d 21; *Murg v. Barnsdall Nursing Home*, 2005 OK 74, ¶ 1, 123 P.3d 11; *City of Anadarko v. Fraternal Order of Police, Lodge 118*, 1997 OK 14, ¶ 1, 934 P.2d 328.

2. Our decision regarding the necessity of a new trial in the adoption proceeding negates any need to address either the trial court's original placement decision or whether the preferential order for custody determinations established by 10 O.S. Supp.2004 § 21.1 is mandatory or merely serves as a guide in custody matters subject to a determination of the child's best interests. Nevertheless, we note the existence of *In re Baby Girl L*, 2002 OK 9, ¶ 21, 51 P.3d 544, *as clarified on rehearing* (2002), addressing the impact of the "best interests" language contained in § 21. In so doing, we acknowledged that the statute contained the best interests standard and that a trial court's failure to consider the standard would result in rendering the language of the statute superfluous or useless rather than recognizing all portions of the statute as operative.

Our determination that it is the trial court's weighing of the child's best interests rather than the departmental consent to adoption which must prevail in an adoption proceeding coupled with the finding that the trial court erred in its refusal to grant the relatives a new trial is dispositive or renders moot the arguments made in the companion case concerning the alleged fraudulent conduct of the foster parents in relation to the potentially perjured testimony presented in the first cause concerning the foster parents' financial condition and the utilization by the foster mother of inconsistent dates of birth. Nevertheless, we note that, in *Patel v. OMH Medical Center, Inc.*, 1999 OK 33, ¶ 25, 987 P.2d 1185, *cert. denied*, 528 U.S. 1188, 120 S.Ct. 1242, 146 L.Ed.2d 100 (2000), we determined that a judgment could be vacated for either intrinsic or extrinsic fraud and described as an example of

First, whether the Department's authority to consent to the adoption of a child under 10 O.S.2001 § 7003–5.5(H)(3) [3] overrides the trial court's duty to determine the best interests of the child in an adoption proceeding. Second, whether the trial court abused its discretion [4] by refusing to grant a new trial based on the relatives' [5] discovery of new evidence.

¶ 2 In accordance with *State ex rel. Dept. of Institutions, Social & Rehabilitative Serv. v. Griffis*, 1975 OK 164, ¶ 25, 545 P.2d 763, 83 A.L.R.3d 363, we determine that the refusal of the Department to consent to the adoption of a child under 10 O.S.2001 § 7003–5.5(H)(3) will not divest the district court of jurisdiction to hear and determine an adoption petition based on the child's best interests. The determination is supported by: 1) the expressed legislative purpose of the Oklahoma Adoption Code 10 O.S.2001 § 7501–1.1, *et. seq*, to "ensure and promote the best interests of the child in adoption;" [6] 2) the Legis-

3. Title 10 O.S.2001 § 7003–5.5 provides in pertinent part:

"... H....3. If the court terminates the rights of a parent and places the child with an individual or agency, the court may invest in such individual or agency authority to consent to the adoption of the child. Provided, that where the court places the child with the Department, it shall vest the Department with authority to place the child and, upon notice to the court that an adoption petition has been filed concerning such child, invest the Department with authority to consent to the adoption of the child, and the jurisdiction of the committing court shall terminate upon final decree of adoption."

4. *DeGolyer v. Chesney*, 1974 OK 117, ¶ 0, 527 P.2d 844; *Matter of Adoption of Eddy*, 1971 OK 103, ¶ 13, 487 P.2d 1362.

5. Rule 1.25, Oklahoma Supreme Court Rules, 12 O.S.2001, Ch. 15, App. 1 provides in pertinent part:

"... (b) ... In appeals from juvenile proceedings including, but not limited to, adoption and paternity proceedings and proceedings under the juvenile code, the initial of the child's name shall be used rather than the child's name...."

References to the appellants as "relatives" and to the appellees as "foster parents" is done in the same spirit of protecting the privacy of the child as that expressed in Rule 1.25, Oklahoma Supreme Court Rules, 12 O.S.2001, Ch. 15, App 1, this note, supra.

6. Title 10 O.S.2001 § 7501–1.2 provides in pertinent part:

"A. The Legislature of this state believes that every child should be raised in a secure, loving home and finds that adoption is the best way to provide a permanent family for a child whose biological parents are not able or willing to provide for the child's care or whose parents believe the child's best interest will be best served through adoption. The purpose of the Oklahoma Adoption Code is to:
1. Ensure and promote the best interests of the child in adoption and to establish an order-

intrinsic fraud the giving of perjured testimony. Furthermore, there is no evidence that the trial court's initial order was anything more than an interlocutory decree of adoption issued pursuant to 10 O.S.2001 § 7505–6.1 or that there had been any application made pursuant to 10 O.S. 2001 § 7505–6.3 for the entry of a final decree of adoption. Even so, judgments on appeal generally do not take on the character of a final judgment absent their being affirmed [See, *Stephens v. General Motors Corp.*, 1995 OK 114, ¶ 11, 905 P.2d 797; *Sadberry v. Hope*, 1968 OK 107, ¶ 8, 444 P.2d 175 ] and no final decree of adoption may issue while a matter is on appeal. *Matter of Adoption of L.D.S.*, 2006 OK 80, ¶ 6, 155 P.3d 1. Finally, even if the three month period for challenging a final decree of adoption had passed before the Department discovered the adoptive father's misleading testimony, we have determined that the stated time period for challenge remains subject to the discovery rule. See, *Wade v. Geren*, 1987 OK 81, ¶ 12, 743 P.2d 1070. Title 10 O.S.2001 § 7505–6.1 is entitled "[I]nterlocutory decree" and provides:

"Upon examination of the report required in Section 29 or 30 of this act, and after hearing, the court may issue an interlocutory decree giving the care and custody of a minor to the petitioners, pending the further order of the court."

Title 10 O.S.2001 § 7505–6.3 providing in pertinent part:

"A. After six (6) months from the date of the interlocutory decree unless the court waived all or part of the waiting period, the petitioners may apply to the court for a final decree of adoption. The court shall thereupon set a time and place for final hearing...."

Title 10 O.S.2001 § 7505–7.2 providing in pertinent part:

"A. Except as otherwise provided by paragraph 3 of subsection B of Section 7505–2.7 of this title:
... 2. No adoption may be challenged on any ground either by a direct or collateral attack more than three (3) months after the entry of the final adoption decree regardless of whether the decree is void or voidable, and the minority or incompetence of the natural parent shall not operate to prevent this time limit from running...."

lature's directive that the court may enter a final decree of adoption if it is satisfied "that the adoption is in the child's best interests;"[7] and 3) Oklahoma jurisprudence providing that the primary issue in adoption is the protection of the best interests of the child.[8] Second, we hold that *Joliff v. Joliff,* 1992 OK 38, 829 P.2d 34 teaches that the trial court erred in its refusal to grant a new trial when the new evidence produced concerned the matter of the child's best interests and where the evidence, if uncontroverted, admittedly would change the original adoption determination.

## FACTS

¶ 3 In August of 2004, DHS was notified that the child, a newborn, tested positive for cocaine. M.J.S. was placed in protective custody and adjudicated as deprived on September 22, 2004, after the mother stipulated to the allegations of drug use. Thereafter, the father also stipulated to the allegations and a treatment plan was approved.

¶ 4 The child was hospitalized until September 1, 2004, when she was discharged into emergency foster care. The foster parents obtained custody on September 7th, dealing with the child's major medical problems associated with her prenatal history of drug exposure, including suffering from drug withdrawal. Currently, M.J.S. is developmentally delayed, has continued problems with asthma and ear infections and is at a high risk for respiratory problems. It is undisputed that: the child has had expert care during her placement with the foster parents; the foster parents have provided a loving and nurturing home environment; and the child and the foster parents are emotionally bonded.

¶ 5 On November 12, 2004, the father notified the social worker that he wanted the child placed with the relatives in Texas until he had the opportunity to "get on his feet." Later in the month, the social worker spoke with the relatives who expressed an interest in adopting the child. However, the social worker rejected the relatives as a placement because of concerns that the child might be returned to the father. In February of the following year, the father advised the social worker that he might be willing to relinquish his parental rights if the relatives were allowed to adopt M.J.S.

¶ 6 The father relinquished his parental rights on March 11, 2005, again requesting that the relatives be allowed to adopt M.J.S. The social worker did not hear from the relatives between November of 2004 and March 30, 2005, when the relatives began receiving reports of progress made towards adoption proceedings involving the child. On April 4, 2005, the mother's parental rights were terminated and the child was placed in the Department's permanent custody affording DHS the statutory authority to consent

ly and expeditious process for movement of adoption matters through the courts . . ."
The best interests of the adopted minor remains the primary concern on appeal. 10 O.S.2001 § 7505–7.2(B). See also, 10 O.S.2001 § 7505–7.1. Furthermore, the same sentiment for an overriding concern for the best interests of the child is expressed in the Oklahoma Children's Code (Children's Code), 10 O.S.2001 § 7001–1.1, *et seq.* Title 10 O.S.2001 § 7001–1.2 provides in pertinent part:
"... B. The paramount consideration in all proceedings concerning a child alleged or found to be deprived is the health and safety and the best interests of the child...."
The Adoption Code's and the Children's Code emphasis on the child's best interests comports with the Adoption and Safe Families Act (ASFA), 42 U.S.C. § 601, *et seq.,* which tilts the delicate balance in the child's favor and requires states, as a condition to continued receipt of certain federal funding, to do likewise. *State ex rel. SNW v. Mitchell,* 2001–2128, 800 So.2d 809, 815 (La. 2001); Annot., *Construction & Application by State Courts of the Federal Adoption & Safe Families Act and Its Implementing State Statutes,* 10 A.L.R.6th 173 (2006).

7. Title 10 O.S.2001 § 7505–6.3(F) providing:

"The court may enter a final decree of adoption, if the court is satisfied that the adoption is in the best interests of the child."

8. *Matter of Adoption of C.D.M.,* 2001 OK 103, ¶ 23, 39 P.3d 802, *cert. denied,* 535 U.S. 1054, 122 S.Ct. 1911, 152 L.Ed.2d 821 (2002); *Matter of Jeffrey S.,* 1983 OK 49, ¶ 34, 663 P.2d 1211; *State ex rel. Dept. of Inst., Social & Rehabilitative Serv. v. Griffis,* 1975 OK 164, ¶ 20, 545 P.2d 763, 83 A.L.R.3d 363; *In re Adoption of Greer,* 1969 OK 163, ¶ 13, 463 P.2d 677; *Wade v. Mantooth,* 1966 OK 121, ¶ 0, 417 P.2d 313.

to the child's adoption.[9] In July, the mother gave birth to a son, D.D., who was also born addicted to drugs and whose father differs from that of M.J.S., making M.J.S. and D.D. half siblings. D.D., like M.J.S., was placed with the foster parents.

¶ 7 The cause was transferred to the Adoption Transition Unit and a new social worker was assigned to M.J.S. The foster parents' home study was completed on September 20, 2005. The relatives contacted the new social worker who determined that the original worker had not adequately researched her concerns regarding placement with the relatives. The new social worker requested a home study for relatives, which was initiated in May and completed in November of 2005. Both home studies were approved. Between November and January, there were four congenial visitations between the child and the relatives.[10]

¶ 8 On December 7, 2005, DHS served the foster parents with a 5–day notice to remove M.J.S., to which they objected. The foster parents filed a petition for adoption on December 15, 2005. The trial court stayed the removal and entered an order on December 30, 2005, indicating that the petition for adoption would be heard in lieu of the objection to removal. The relatives intervened in the adoption proceeding filing a cross petition for adoption.

¶ 9 In reviewing the evidence from the adoption proceeding, the trial court recognized that the home studies indicated both homes and families were equally qualified as adoptive families. While both the relatives and the foster parents had the flexibility in employment to meet the needs of the child when demands arose, each of the two families had other advantages. The relatives were supporting two children, living in a larger home with more amenities, had a higher income and were younger and healthier. The foster parents were supporting one child, had plans to relocate to a larger house and **were debt free.** While the relatives were familiar with some of the child's health issues and had made contacts in the medical community regarding her needs, the foster parents had cared successfully not only for M.J.S. and D.D., as drug-addicted infants, but other foster children as well. Although the relatives were ambivalent concerning their willingness to adopt D.D. because of his apparent lack of blood relationship with them, the foster parents expressed a desire to adopt D.D. if parental rights were terminated and to raise M.J.S. and D.D. together.[11] The relatives' visits with M.J.S. were helping to develop an affectionate relationship. Nevertheless, the child and foster parents shared a loving bond and attachment not present between M.J.S. and the relatives.

¶ 10 On November 14, 2005, DHS recommended that the relatives be authorized to adopt the child. The trial court heard evidence on two days in January, allowed the submission of briefs in lieu of closing arguments and took the cause under advisement. On March 22, 2006, the trial court filed a lengthy document entitled, "Decision," in which it was determined that: the best inter-

9. Title 10 O.S.2001 § 7003–5.5, see note 3, supra.

10. The record indicates that visitation continued between M.J.S. and the relatives during the pendency of the consolidated appellate matters. It also appears that her half brother, D.D., was included in visitation. The Dispositional Review & Permanency Order filed on November 17, 2006, providing in pertinent part:

"... Currently the relatives are having monthly visitation under court order. The relatives would like to continue visits with [M.J.S.] and with her half brother, [D.D.]. The relatives expressed they had met [D.D.] on one occasion and has [sic] always wanted him to be included in [M.J.S.'s] visits. [D.D.] was included in the October visit and will be here after...."

Although the record is not entirely clear as to the whereabouts of either M.J.S. or D.D. following the hearing on the fraud issue, statements made in the briefs indicate that both children have been placed with the relatives.

11. The Legislature has expressed its intent that every reasonable attempt be made to place siblings in the same home. Title 10 O.S.2001 § 7202 provides in pertinent part:

"For purposes of the Oklahoma Foster Care and Out-of-Home Placement Act, it is the intent of the Legislature that:
... 12. When two or more children in foster care are siblings, every reasonable attempt should be made to place them in the same home. In making a permanent placement such children should be placed in the same permanent home ...."

ests of M.J.S. required that the foster parents' objection to her proposed removal be sustained; the foster parents' petition for adoption be granted; and the relatives' cross-petition for adoption be denied.[12] The journal entry of final order, reflecting the same result as the "decision" issued earlier, was filed on April 25, 2006.

¶ 11 The relatives filed their petition in error on April 19, 2006. On the 26th, they filed a supplemental petition in error along with a motion to retain. The motion was granted on May 16, 2006. The briefing cycle was completed on July 27, 2006, with the filing of the relatives' reply brief.

¶ 12 In June of 2006, one of the relatives viewed a news report involving sex offenders. Afterwards, she conducted an internet search which revealed an offender with the same name as the foster father. The relative contacted a private investigator. The investigator's report absolved the foster father as not the individual identified on the website. Nevertheless, **it did reveal that the foster father had been less than candid in his testimony regarding financial affairs as to the couple's lack of any debts, their ability to obtain a larger residence and the time and manner in which the couple acquired ownership of their home.**

■ ¶ 13 On July 18, 2006, the relatives advised the Court that a post-trial motion requesting a new trial had been filed in the trial court.[13] The motion was based on the newly discovered evidence found in Texas public records. **The records revealed: the existence of several tax liens in amounts exceeding one million dollars;** [14] **bankrupt-**

---

12. The foster parents argue that the trial court's characterization of the removal and adoption proceedings as having been "consolidated" with the objection to M.J.S. being removed from the foster parents' home resulted in the trial court's reaching and considering the cause in light of the Oklahoma Children's Code (Children's Code), 10 O.S.2001 § 7001–1.1. The assertion is that the Children's Code had no application to the adoption. Title 10 O.S.2001 § 7001–1.1(D) provides:
 "The provisions of this chapter shall not apply to adoption proceedings and actions to terminate parental rights which do not involve a petition for deprived status of the child. Such proceedings and actions shall be governed by the Oklahoma Adoption Code, Chapter 75 of this title."
The assertion is unconvincing in two respects. First, M.J.S. had been determined to be deprived. Second, the brief presents no specific examples of the trial court's application of the Children's Code to the relatives' detriment. Assignments of error not argued or supported in the brief with citations of authority are treated as waived. *Mills v. Grotheer,* 1998 OK 33, ¶ 15, 957 P.2d 540; *Peters v. Golden Oil Co.,* 1979 OK 123, ¶ 3, 600 P.2d 330. The relatives' arguments that to allow the district court to determine the child's best interests in adoption proceedings violates the Okla. Const. art. 7, § 7(a) and art. 25, § 1 are likewise unconvincing. The Okla. Const. art. 7, § 7(a) provides in pertinent part:
 "The State shall be divided by the Legislature into judicial districts ... The District Court shall have unlimited original jurisdiction of all justiciable matters, except as otherwise provided in this Article, and such powers of review of administrative action as may be provided by statute."
The relatives ignore the Legislature's explicit directive that the jurisdiction of the committing court "shall" terminate only upon the issuance of the final decree of adoption. Title 10 O.S.2001 § 7003–5.5(H)(3), see note 3, supra. The Okla. Const. art. 25, § 1 provides in pertinent part: "In order to promote the general welfare of the people of the State of Oklahoma and for their protection, security, and benefit, the Legislature and the people by initiative petition are hereby authorized to provide by appropriate legislation for the relief and care of needy aged persons who are unable to provide for themselves, and other needy persons who, on account of immature age, physical infirmity, disability, or other cause, are unable to provide or care for themselves ..."
Not only does the district court's consideration of a child's best interests in an adoption proceeding not violate this constitutional provision, the Legislature has specifically provided that the purpose of the Adoption Code is to ensure and promote the best interests of the child in adoption matters. Title 10 O.S.2001 § 7501–1.2, see note 6, supra.

13. The trial court may entertain a petition for new trial on grounds of newly discovered evidence notwithstanding that an appeal is pending. *Pleasant v. Allen Bros.,* 1937 OK 459, ¶ 0, 71 P.2d 114.

14. The liens were filed both by the Internal Revenue Service (IRS) and the State of Texas. The IRS liens were associated with business and personal tax liabilities while the Texas lien appears to be related to the couple's previously owned business only. The exact amount of the foster parents' liability was unclear. The foster mother testified that the IRS liens had been compromised and that a settlement had been reached which the couple was in the process of paying off at the time of the hearing on the new trial motion. Apparently, by the time that the com-

cy filings in 1997 and in 2001 in which it appeared the foster parents had not revealed all their assets in violation of federal law; and a homeowners' association lien for failure to pay assessments. Although the foster father testified that the couple purchased their residence in 2000 as an investment, deeds located in the Tulsa County Courthouse revealed that the residence was listed in the name of the foster mother's father when purchased in 2000, coming into the foster couple's name with the filing of a general warranty deed in 2005. The residence does not appear as an asset on the 2001 bankruptcy filing. The investigative report also revealed that the foster mother, when listing her year of birth, utilized two dates differing by two years and that she utilized the more flattering date on DHS applications and forms.

¶ 14 In an order filed on September 12, 2006, the trial court recognized that it had entered its original adoption decision based on the foster father's uncontroverted trial testimony that a new residence could be afforded and attained to correct a DHS concern with regard to residential space. Recognizing that the foster parents' previous decision-making processes bordered on unethical, if not illegal, the trial court determined that the newly discovered evidence was material and such that would probably change the result if a new trial were granted. It further found that if the evidence went uncontroverted in a new trial, it would impact the Court's determination on financial ability and on the foster parents' moral and ethical qualifications as they related to the child's best interests. Nevertheless, because the trial court determined that, with due diligence, the evidence could have been obtained before trial, it overruled the motion for a new trial.

¶ 15 After being informed that the trial court had ruled on the new trial motion, the adoption and new trial matters were consolidated and an expedited briefing schedule was set. The final brief was filed on November 15, 2006; and the record on the new trial motion was received from the trial court on November 22, 2006. On December 29, 2006, we were notified that the trial court had granted the Department's motion to vacate its original adoption decision.[15] Subsequent thereto, the parties were directed to explain why the consolidated appeals should not be dismissed. We were advised that dismissal would be inappropriate should the foster family appeal the dismissal order, which they did with the filing of their petition in error on January 25, 2007. The briefing schedule was completed with the filing of the foster parents' reply brief on March 19, 2007. However, the transcript of the vacation hearing, which was designated of record, was not filed in this Court until April 25, 2007.

## DISCUSSION

¶ 16 a. The Department's authority to consent to the adoption of a child pursuant to 10 O.S.2001 § 7003–5.5(H)(3) does not divest the trial court's duty to determine the best interests of the child in an adoption proceeding.

■■■ ¶ 17 Once the child was placed with the Department pursuant to 10 O.S.2001

---

panion case was heard, late in 2006, the tax liens and the real estate liens had been released.

15. In October of 2006, in conjunction with the Department's unsuccessful attempt to schedule a best interests hearing, the trial court granted DHS's unopposed request to remove D.D. from the home of the foster parents. Following the hearing on the Department's motion for new trial, the Department removed M.J.S. from the foster home and placed her with the relatives. It is unclear whether D.D. was also placed with the relatives. Once the district court entered its judgment determining that the best interests of the child were to move M.J.S. to the relatives' home, the Department had authority to do so Title 10 O.S. Supp.2002 § 7003–7.1(C)(1) providing in pertinent part:

"If the child is placed in the custody of the Department of Human Services, whether in emergency, temporary or permanent custody, the Department shall determine the appropriate placement of the child...."
Title 10 O.S.2001 § 7004–1.1(A)(3) providing:
"In addition to the other powers and duties prescribed by law, the Department of Human Services shall have the power and duty to: Transfer any child in its custody from any authorized placement to another authorized placement if such transfer is consistent with the treatment needs of the child or as may be required in an emergency, subject to the provisions of Section 7003–5.4a of this title ..."
*State ex rel. Dept. of Human Servs. v. Colclazier,* see note 23, infra.

§ 7003–5.5(H)(3),[16] the relatives assert that D.H.S. had exclusive authority to consent to the child's adoption, leaving the trial court merely to "rubber stamp" the recommendation. They argue this proposition despite their recognition that it is clearly the trial court's statutory duty to determine best interests in every adoption case.[17] Conversely, the foster parents contend that the Department's authority to recommend an adoptive family does not override the trial court's responsibility to determine the child's best interests. We agree with the foster parents' contention.

¶ 18 Title 10 O.S.2001 § 7003–5.5(H)(3) provides in pertinent part:

"... Provided, that where the court places the child with the Department, it shall vest the Department with authority to place the child and upon notice to the court that an adoption petition has been filed concerning such child, invest the Department with authority to consent to the adoption of the child, and the jurisdiction of the committing court shall terminate upon final decree of adoption."

¶ 19 We have not addressed this particular statute. Nevertheless, we have considered similar statutory language [18] dealing with the right of the Department to consent to an adoption in a decision addressing the precise issue presented here—whether the district court had jurisdiction to hear and determine the matter of the foster parents' adoption petition, notwithstanding the Department's refusal to consent to such an adoption.

¶ 20 Title 10 O.S. Supp.1974 § 60.05 provided that adoption of a child could be decreed "when there ha[d] been filed written consent to adoption executed by" the Department's head or designee. The statute required a Department employee to appear in court and to "give written consent for the adoption of such child by the family whose application for adoption ha[d] been approved by the Department."

¶ 21 The effect of the statutory language was considered in *State ex rel. Dept. of Institutions, Social & Rehabilitative Serv. v. Griffis*, 1975 OK 164, ¶ 25, 545 P.2d 763, 83 A.L.R.3d 363. The *Griffis* Court held that, **despite the language indicating the necessity for Department approval of adoptions, the district court was constitutionally vested with jurisdiction to determine whether the adoption would promote the best interests of the child and that the decision could not be delegated to the Department.**

¶ 22 The facts here and those present in *Griffis* are substantially similar. In both cases, **similar statutory language is at issue**, the child was determined to be dependent and neglected, parental rights were voluntarily relinquished, the child was placed in

**16.** Title 10 O.S.2001 § 7003–5.5(H)(3), see note 3, supra.

**17.** Appellant's quote 10 O.S.2001 § 7505–6.3(F), see note 7, supra. Appellants brief in chief, filed on June 30, 2006, providing in pertinent part at p. 17:

"... In the instant case, the Trial Court reached the same conclusion as the *D.D.B.* opinion, 'It is the duty of the trial court in adoption matters to determine whether the adoption would be in the child's best interests.' As a naked assertion of law, this statement is hard to dispute, as this is clearly the statutory duty of the trial court in every adoption case. OKLA. STAT. Tit 10, § 7505–6.3(F) ...'"

Admission in a brief may be regarded as supplement to the appellate record. *King v. King*, 2005 OK 4, ¶ 16, 107 P.3d 570; *Keating v. Edmondson*, 2001 OK 110, ¶ 9, 37 P.3d 882; *World Publishing Co. v. White*, 2001 OK 48, ¶ 12, 32 P.3d 835.

**18.** Title 10 O.S. Supp.1974 § 60.05 providing in pertinent part:

"An adoption of a child may be decreed when there has been filed written consent to adoption executed by:

... (4) The executive head of an agency if both parents are dead, or if the child has been relinquished for adoption to such agency, or if the rights of the parents have been judicially terminated and custody of the child has been terminated and custody of the child has been legally vested in such agency with authority to consent to adoption of the child ... The consent required ... shall be acknowledged before a judge ... Provided, ... that when such consent for adoption is necessary for children in custody of the Department of Public Welfare, the Director of Public Welfare may designate, authorize, and direct in writing an employee of the Department to appear in the court of the county in which said adoption proceedings are to be completed and to give written consent for the adoption of such child by the family whose application for adoption has been approved by the Department of Public Welfare."

foster care and subsequently placed with the Department for the purpose of finding a suitable adoptive home. The one remarkable difference is that, in *Griffis*, the Department withheld its consent for foster care adoption based on what it viewed as unfavorable situations in the foster home—here, both the relatives and the foster parents received favorable home study reports.

¶ 23 The reasons announced in *Griffis* for rejecting the contention that the adoption could not be completed without the Department's consent are equally persuasive today. Adoption remains a function which requires the exercise of judicial power vested in the courts by Article 7 of the Oklahoma Constitution. To adopt the position urged by the foster parents would leave the Department, not the court, as the final arbiter in an adoption proceeding. Furthermore, the Department would be invested with a power not all natural parents enjoy, *i.e.* those whose parental bond is severed without consent [19]—to thwart an adoption that serves the child's best interests.

19. The exceptions to the requirement of parental consent are contained in 10 O.S.2001 § 7505–4.2.

20. *Matter of Adoption of C.D.M.*, see note 8, supra; *Matter of Jeffrey S.*, see note 8, supra; *State ex rel. Dept. of Inst., Social & Rehabilitative Serv. v. Griffis*, see note 8, supra; *In re Adoption of Greer*, see note 8, supra; *Wade v. Mantooth*, see note 8, supra.

21. Title 10 O.S.2001 § 7501–1.2, see note 6, supra.

22. Title 10 O.S.2001 § 7003–5.5(H)(3), see note 3, supra.

23. Some jurisdictions maintain that specific mandatory terms of their adoption statutes deprive a court of jurisdiction to render a judgment on an adoption petition without the consent of the agency or institution having legal custody. However, other courts have adopted the position maintained by this Court in *State ex rel. Dept. of Inst., Social & Rehabilitative Serv. v. Griffis*, see note 8, supra, determining that even so-called mandatory language of an adoption statute does not deprive the court of jurisdiction to determine an adoption petition where the best interests of the child are at stake. See generally, Annot., *Adoption of Child in Absence of Statutorily Required Consent of Public or Private Agency or Institution*, 83 A.L.R.3d 373 (1978).

■ ¶ 24 Today, as in *Griffis*, the primary issue in an adoption proceeding remains whether the child's best interests are promoted. Not only is this a well settled jurisprudential rule,[20] it has the imprimatur of the Oklahoma Legislature. Title 10 O.S.2001 § 7501–1.2 specifically provides that the purpose of the Adoption Code is to "ensure and promote the best interests of the child in adoption."[21] Therefore, consistent with *State ex rel. Dept. of Institutions, Social & Rehabilitative Serv. v. Griffis*, 1975 OK 164, ¶ 25, 545 P.2d 763, 83 A.L.R.3d 363, we hold that the grant of authority to the Department to consent to the adoption of a child pursuant to 10 O.S.2001 § 7003–5.5(H)(3)[22] does not divest the trial court's duty to determine the best interests of the child in adoption proceedings.[23]

¶ 25 Two nonprecedential[24] Court of Civil Appeals opinions have visited the issue of whether the Department may withhold consent and thereby direct the decision of the district court in an adoption proceeding. *In re Adoption of D.D.B.*, 2004 OK CIV APP 31, 87 P.3d 1112, promulgated by Division II,

The relatives rely on isolated language in *State ex rel. Dept. of Human Services v. Colclazier*, 1997 OK 134, ¶ 10, 950 P.2d 824, *as corrected* (1997), *rehearing denied* (1998) for the proposition that the *Colclazier* Court implied that the trial court's direct supervisory power changed or perhaps ceased once it placed permanent custody of a child with DHS. The reliance is misplaced. First, the precise issue presented here was not before the Court in *Colclazier*. Second, the opinion specifically recognizes that the review power over the placement of children in permanent DHS custody is part of the nature of the court's continuing authority over children adjudicated deprived. Finally, 10 O.S.2001 § 7003–5.5(H)(3), see note 3, supra, specifically provides that the "jurisdiction of the committing court shall terminate upon final decree of adoption"—not at some previous point in the adoption litigation.

24. Opinions released for publication by order of the Court of Civil Appeals are persuasive only and lack precedential effect. Rule 1.200, Supreme Court Rules, 12 O.S.2001, Ch. 15, App. 1; 20 O.S.2001 §§ 30.5 and 30.14. We express no opinion as to a third Court of Civil Appeals' opinion, *In re Adoption of I.D.G.*, 2002 OK CIV APP 22, 42 P.3d 303, recognizing that the Department may not operate beyond the review of the trial court in adoption proceedings and involving procedural issues not raised here.

holds that the trial court has jurisdiction to review the decision of the Department to refuse to consent to an adoption petition. Division I held to the contrary in *Matter of E.C.B.*, 2003 OK CIV APP 5, 62 P.3d 789. To the extent that *E.C.B.* fails to conform with the principles announced today, it is hereby expressly overruled.

¶ 26 **b. The trial court erred in its refusal to grant a new trial when the new evidence produced concerned the matter of the child's best interests and where the evidence, if uncontroverted, admittedly would change the original adoption determination.**

 ¶ 27 The foster parents correctly point out that this Court upholds the decision of a trial court on a motion for new trial absent a showing of abuse of discretion [25] and that motions filed on grounds of newly discovered evidence are viewed with disfavor.[26] Because they assert that the evidence concerning the foster parents' financial situation could have been discovered prior to trial with the exercise of due diligence, the foster parents argue that the refusal to grant a new trial must be affirmed. Although the relatives contend that they demonstrated due diligence, they also claim that a new trial should be granted because the nature of the evidence weighs heavily against a finding that an adoption by the foster parents would serve the child's best interests. On this issue, we agree with the relatives.[27]

¶ 28 *Joliff v. Joliff*, 1992 OK 38, ¶ 15, 829 P.2d 34. involved review of the trial court's custody decision in a divorce action and its subsequent refusal to grant a new trial on the issue. As here, the motion for new trial was filed on the basis of newly discovered evidence. The alleged newly discovered evidence was a Department report received by the father after the divorce trial. The *Joliff* Court recognized that it was conceivable that, with due diligence, the father could have discovered some of the evidence contained in the report before trial. Nevertheless, **the Court emphasized that in custody matters the exercise of due diligence would not be the determining factor in a decision presenting the new trial issue.** The opinion provides in pertinent part:

> "... This [due diligence] is not the decisive factor in affirming the trial court's decision in this case because while it is certainly true that courts 'view with disfavor motions for new trial based on newly-discovered evidence ...' and that 'such motions should be examined with caution ...,' we likewise view with equal disfavor custody decrees not based on the *best interest* of the child...." [Footnotes omitted. Emphasis in original.]

While the *Joliff* Court upheld the trial court's decision to deny a new trial, it did so largely because the trial court reviewed the Department's report and did not change its custody decision. Finally, the Court was adamant that the public should "make no mistake," that its first concern was the welfare of the child and that the trial court was being affirmed under the narrow set of facts presented.

---

25. *Lierly v. Tidewater Petroleum Corp.*, 2006 OK 47, ¶ 15, 139 P.3d 897, *as corrected* (2006); *B–Star, Inc. v. Polyone Corp.*, 2005 OK 8, ¶ 13, 114 P.3d 1082, *as corrected* (2005), *motion to dismiss denied/rehearing denied* (2005).

26. *Joliff v. Joliff*, 1992 OK 38, ¶ 15, 829 P.2d 34; *West v. Cajun's Wharf, Inc.*, 1988 OK 92, ¶ 20, 770 P.2d 558; *Hunter v. Hunter*, 1970 OK 106, ¶ 19, 470 P.2d 1020.

27. Reasonable diligence is defined as appropriate action where there is some reason to awaken inquiry and to direct diligence in a channel in which it would be successful. *Joliff v. Joliff*, see note 26, supra; *Hunter v. Hunter*, see note 26, supra. All evidence presented at trial indicated that the foster parents were debt free and solvent. Nevertheless, our determination regarding the best interest issue on due diligence negates the necessity of determining if something should

have caused the relatives to do a pre-trial review of the economic issue. Furthermore, we note that it has been recognized that the statutory grounds for granting a new trial are not exclusive of the broad inherent powers of the court to see that a litigant receives substantial justice. *Alexander v. Alexander*, 1937 OK 23, ¶ 0, 67 P.2d 33 [Overruled in part on other grounds.]. We recognize that the newly discovered evidence consists largely of public records and that the general rule is that such records will not serve as grounds for a new trial. *Patteson v. Myers*, 1938 OK 559, ¶ 0, 83 P.2d 846; *Ball v. Fleshman*, 1938 OK 380, ¶ 0, 83 P.2d 870. Nevertheless, the general rule may not be invoked to trump the Court's recognition in *Joliff v. Joliff*, see note 26, supra, relating to the need for consideration of the child's best interests. See, ¶¶ 28–30.

¶ 29 Here, the trial court's order provides in pertinent part:

"... **The evidence presented at the hearing are [sic] material to the issue of the child's best interest-current and long term** ....

The evidence presented at the hearing is further **material to the issue of the child's best interest** because it tends to demonstrate the Petitioners' ability or nonability to deal appropriately and legally with financial issues and the consequences thereof. **Their previous decision-making processes bordered on questionably unethical, if not illegal, thinking. The character of potential adoptive parents is an important issue to the best interest of any child** ....

The Court further finds that **the evidence is such that would probably change the result if a new trial is granted.** Clearly, if uncontroverted at trial, **this evidence substantially alters the complexion of the evidence presented at trial in that it directly impacts the Court's determination that the Petitioners' income was sufficient to provide a suitable home. It further impacts the Court's determination that the Petitioners were morally and ethically qualified to be considered as potential adoptive parents.** This evidence clearly negates the foster parent preference factor in the Court's ultimate decision regarding the best interests of this child ...." [Emphasis provided.]

Despite its clearly voiced concerns as to the adoptive parents' qualifications and the child's best interests, the trial court denied the relatives' petition for new trial because it believed that, as readily as the information was discovered once the relative mother's interest was piqued regarding the child mo-

lester issue, the same evidence could have been discovered with the exercise of due diligence either before the adoption proceedings began or within ten days of the trial's conclusion.

■■■■ ¶ 30 This Court sanctions adoptions when they serve the child's best interests.[28] The best interests of the child serve as the polestar in all adoption proceedings.[29] It is the trial court's duty to determine whether the adoption would be in the child's best interests.[30] The *Joliff* Court made it clear that due diligence is not to be the deciding factor in determining whether a new trial should be granted in a custody matter. Rather, *Joliff* **teaches that when a trial court has the kind of concerns expressed here, which directly impact the child's best interests, a new trial should be granted.** Therefore, we hold that the trial court erred in its refusal to grant a new trial when the new evidence produced concerned the matter of the child's best interests and where the evidence, if uncontroverted, admittedly would change the original adoption determination.[31]

### CONCLUSION

¶ 31 This Court does not dismiss the importance of the Department's recommendation or the worthiness of its consideration in adoption matters nor do we discount the need to consider statutorily provided preferential considerations when all factors in a custody matter are equal. Nevertheless, we hold that the right of the Department to consent to the adoption of a child under 10 O.S.2001 § 7003–5.5(H)(3) [32] does not usurp the trial court's duty to allow adoption based on a determination of the child's best interests.

¶ 32 We are also mindful of the formidable task a trial court faces when rendering an

28. *Matter of Adoption of C.D.M.*, see note 8, supra; *Matter of Adoption of Baby Boy W*, 1992 OK 58, ¶ 12, 831 P.2d 643.

29. *State ex rel. Department of Inst., Social & Rehabilitative Serv. v. Griffis*, see note 8, supra; *In re Adoption of Greer*, see note 8, supra; *Wade v. Mantooth*, see note 8, supra.

30. *Matter of Adoption of C.D.M*, see note 8, supra; *Matter of Adoption of G.D.L.*, 1987 OK 115, 747 P.2d 282, see note 8, supra; *State ex rel. Dept. of Inst., Social & Rehabilitative Serv. v. Griffis*, see note 8, supra.

31. The foster parents made similar allegations about failure to meet all or a portion of the conditions necessary for vacation of a judgment on the basis of fraud in the companion case. Our determination that the best interests of the child will override failure to demonstrate the due diligence factor in the request for a new trial is dispositive of these assertions.

32. Title 10 O.S.2001 § 7003–5.5(H)(3), see note 3, supra.

adoption decision. However, under the teachings of *Joliff v. Joliff,* 1992 OK 38, 829 P.2d 34, we determine that the character of the newly discovered evidence, which weighs heavily on the child's best interests, and the trial court's acknowledgment that it would change its adoption recommendation had the evidence, if uncontroverted, been presented in the original adoption hearing, requires that a new trial be conducted.

¶ 33 We express no opinion on the final decision to be rendered.[33] The cause is remanded for further proceedings consistent with this opinion.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

WINCHESTER, C.J., EDMONDSON, V.C.J., WATT, TAYLOR, COLBERT, JJ., concur.

KAUGER, J., concurs in result.

LAVENDER, HARGRAVE, OPALA, JJ., concur in part; dissent in part.

