177 P.3d 584 (2008)
2008 OK CIV APP 12
In the Matter of B.O.,
State of Oklahoma, Respondent/Appellant,
v.
James and Margaret Poteet, Petitioners/Appellees.
No. 104,544.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 3. Court of Civil Appeals of Oklahoma, Division No. 3.
October 5, 2007.
Rehearing Denied October 31, 2007.
Certiorari Denied January 28, 2008.
Jane A. Brown, Assistant District Attorney, Oklahoma County, Oklahoma City, OK, for Respondent/Appellant.
R. Kevin Butler, Denker & Butler, P.L.L.C., Oklahoma City, OK, for Petitioners/Appellees.
Robert Ravitz, Oklahoma County Public Defender, William R. Hauser, Assistant Public Defender, Oklahoma City, OK, Amicus Curiae Brief for Child.
BAY MITCHELL, Vice Chief Judge.
¶ 1 The State of Oklahoma appeals a district court order allowing the continued placement of the minor, B.O., with his foster parents pending their adoption of him.[1] B.O.'s grandmother also sought custody and the right to adopt B.O. The issue in this appeal is whether the court erred in selecting Foster Parents over Grandmother for custody and adoption of B.O.[2]
¶ 2 B.O. was placed in protective custody by the Department of Human Services (DHS) due to Mother's substance abuse and neglect. James and Margaret Poteet had been helping Mother and B.O. for several years, and they became B.O.'s kinship foster parents on March 8, 2004. B.O.'s maternal grandmother promptly requested that B.O. be placed instead with her in Texas. Grandmother attended several court hearings while she waited for DHS approval, which took more than a year. The court noted on September 12, 2005 that Grandmother had been approved for placement. DHS then gave notice to Foster Parents that B.O. would be transferred to Grandmother's custody. Foster Parents filed an objection on November 23, 2005. The court stayed the transfer and set the matter for hearing, but the hearing was continued several times.
¶3 Mother had another child on February 1, 2006, who was also placed in DHS custody. Mother then began making progress on her treatment plan. In May 2006, DHS recommended that B.O. and his infant sister be eventually returned to Mother. However, Mother then tested positive for cocaine and ultimately failed to complete her treatment plan. DHS changed its recommendation to terminate Mother's parental rights in June. Mother consented to the termination of her parental rights to B.O. and his sister on December 11, 2006, making them both eligible for adoption.[3] Sister was placed with Grandmother in October 2006, and DHS recommended that B.O. also be placed with her. Foster Parents again objected; and the hearing was set for January 29, 2007.
¶ 4 At the hearing, Foster Parents presented testimony from B.O.'s teachers, the superintendent of Bethany Schools and Bethany's Chief of Police. They testified B.O. was integrated into the community and was doing well in school. He was eleven years old and well-liked by his peers and teachers. B.O. was also actively involved in sports and attended many activities in the community. Foster Parents made sure B.O. received tutoring at the private school he attended, assisted him with his studies, and were actively involved with his school. By the time of the hearing, B.O. was still on an Individualized Education Program (IEP), but he had made significant progress. Foster Parents emphasized that B.O. needed a lot of attention to *587 help him focus and complete his school work, which they had provided for three years.
¶ 5 The testimony, was undisputed that Foster Parents loved B.O. and had taken good care of him. Further, B.O. and their teenage son had developed a loving sibling relationship. Foster Parents encouraged B.O. to have continued supervised contact with his two older brothers. They also facilitated visitation between B.O. and Grandmother. Foster Parents had even allowed Grandmother to stay in their home several times when she attended court hearings.
¶ 6 Foster Parents admitted at the hearing that B.O. had a loving bond with Grandmother. However, they questioned Grandmother's ability to help B.O. with his special educational needs. Grandmother had only graduated from the 8th Grade, and only one of her five children had graduated from high school. They were also concerned that Grandmother would not be able to properly provide for both children. Grandmother only had a two-bedroom house and lived on approximately. $10,000 per year income. Grandmother testified that B.O. would have one bedroom and his sister would stay in her room. She admitted, however, she would probably need a bigger home to give sister her own room when she got older. Foster Parents also believed Grandmother would not be able to take care of an infant while also meeting B.O.'s special needs. Grandmother was disabled from working due to numerous surgeries. On the other hand, Foster Parents were both healthy and well-equipped to assist in B.O.'s educational needs.
¶ 7 B.O. testified in camera that he wanted to live with Grandmother and sister in Texas because they were family. In addition, B.O. stated he did not feel comfortable living with Foster Family. However, he stated Foster Parents took good care of him and he felt loved by both families. B.O.'s therapist also testified that his preference for permanent placement had changed several times. The DHS permanency caseworker recommended that the trial court place B.O. with Grandmother. She testified that Grandmother had been approved for placement, and her home and health were sufficient to care for B.O. However, she admitted permanent placement with Foster Parents would have been recommended if that had been B.O.'s preference.
¶ 8 The trial court recognized that both parties were qualified to adopt B.O. and had loving relationships with him. The court considered the applicable preferences under Oklahoma law, and made detailed findings as to their applicability before ultimately finding the factors in 10 O.S. Supp.2005 § 7003-5.6h weighed in favor of allowing placement with Foster Parents to continue for adoption. The State contends the trial court erred in holding 10 O.S. Supp.2004 § 21.1 did not apply to a permanent placement decision. In addition, State asserts the trial court erred in applying the factors in § 7003-5.6h, because Grandmother had an existing loving relationship with B.O. Finally, State argues the court erred by ruling contrary to the various preferences under Oklahoma law.[4] We affirm because the trial court's findings were not against the clear weight of the evidence or contrary to law.
¶ 9 First, the trial court acknowledged DHS had recommended adoption by Grandmother. The court also correctly noted it was not bound by DHS' recommendation. In re Adoption of M.J.S., 2007 OK 43, ¶ 2, 162 P.3d 200, 203 (even if DHS does not consent to the adoption of a child, the district court still had jurisdiction to hear and determine an adoption petition based on the child's best interests). In addition, the recommendation was heavily based on B.O.'s preference, because the worker stated she would have recommended the Foster Parents if that had been B.O.'s preference.
¶ 10 Next, the trial court held 10 O.S. Supp.2004 § 21.1, which provides a list *588 of placement preferences for custody determinations, did not apply to this case. The court also held that even if the statute applied, its decision would not change. Citing Matter of Application of Smith, 1992 OK CIV APP 97, ¶ 7, 837 P.2d 929, 932, the trial court correctly stated the controlling factor under § 21.1 is the best interests of the child. Id. (deciding custody between a stepfather and a grandmother); see also In re Adoption of D.D.B., 2004 OK CIV APP 31, ¶ 23, 87 P.3d 1112, 1118. Even if the court erred by holding the preferences in § 21.1 did not apply, this is not reversible error because the court applied the best interests test required by § 21.1. Because both parties were proper and fit custodial parties, the trial court had to determine which home would be in B.O.'s best interests.
¶ 11 Third, the court recognized that eleven-year-old B.O. wanted to live with Grandmother and his sister. However, because he was only eleven years old, the court did not apply the rebuttable presumption that a twelve-year-old can form an intelligent preference. 43 O.S. Supp.2002 § 113(B)(3). Further, the court recognized that it `shall not be bound by the child's choice and may take other facts into consideration in awarding custody . . ." Id. (quoting § 113(B)(2)). Fourth, the court held the preference to place siblings together established in 10 O.S. 2001 § 7202(12) is not binding, because the best interest of each sibling was still the standard.
¶ 12 This court does not discount the importance of the § 21.1 preferences, the preference to keep siblings together in § 7202, or the preference of the child in § 113. However, after proper consideration of these factors, the trial court must ultimately be guided by the best interests of the child. As recently stated by the Oklahoma Supreme Court:
This Court does not dismiss the importance of the Department's recommendation or the worthiness of its consideration in adoption matters nor do we discount the need to consider statutorily provided preferential considerations when all factors in a custody matter are equal. Nevertheless, we hold that the right of the Department to consent to the adoption of a child under 10 O.S.2001 § 7003-5.5(H)(3) does not usurp the trial court's duty to allow adoption based on a determination of the child's best interests.

In re Adoption of M.J.S., ¶ 31, 162 P.3d at 211 (internal footnote omitted & emphasis added). Here, the trial court considered the applicable preferences, but found the inquiry was ultimately controlled by the best interests of B.O.
¶ 13 Ultimately, the trial court applied the factors in § 7003-5.6h of the Oklahoma Children's Code, which authorizes adoption by foster families. This section, because it specifically applies to determinations of foster parents' eligibility to adopt, is more relevant and applicable to the issues in this case than § 21.1, which applies generally to custody decisions. To the extent these two statutes may conflict, the trial court correctly applied § 7003-5.6h. The court specified that the application of the factors in § 7003-5.6h required the consideration of B.O.'s best interests. The court carefully weighed these factors and ultimately determined it was in B.O.'s best interest to remain with Foster Parents for adoption.
¶ 14 We find the court did not err in applying § 7003-5.6h. The State contends these factors cannot be applied when there is a family member who has an existing loving bond. However, § 7003-5.6h provides foster parents with certain rights. First, it provides that foster families shall be considered eligible for adoption. § 7003-5.6(A). Next, it requires that the court give great weight to a foster family who has had a child more than a year unless there is a family member with an existing loving bond who is willing and able to adopt the child. § 7003-5.6(B). Finally, the statute provides that in making this determination (between foster family and relative), the court shall consider whether the child is integrated with the foster family to the extent that the child's familial identity is with the foster family. § 7003-5.6h(C). The statute requires consideration of the following factors:
1. The love, affection, and other emotional ties existing between the child and the relatives of the child, and the child's ties with the foster family;

*589 2. The capacity and disposition of the child's relatives as compared with that of the foster family to give the child love, affection, and guidance and to continue the education of the child;
3. The length of time a child has lived in a stable, satisfactory foster home and the desirability of the child's continuing to live in that environment;
4. The physical and mental health of the relatives of the child as compared with that of the foster family;
5. The experiences of the child in the home, school, and community, both when with the parents from whom the child was removed and when with the foster family; and
6. Any other factor considered by the court to be relevant to a particular placement of the child.
§ 7003-5.6h(C).
¶ 15 Nothing in this statute specifies or implies that a relative with a loving bond will always be awarded custody over a foster parent. To the contrary, the first factor requires the court to compare the child's bond with the relative versus the bond with the foster family. This factor would be meaningless if the statute did not apply to this precise situation when a family member with a loving bond and a foster family both desire to adopt the child. In re Baby Girl L., 2002 OK 9, ¶ 21, 51 P.3d 544, 554 (statute must be read to render each part operative and avoid making any part superfluous). The State's requested limitation on § 7003-5.6h would also mean that the court could never find adoption by the foster family was in the best interests of the child when the child had a loving bond with a relative. However, the "best interests of the child serve as the polestar in all adoption proceedings. It is the trial court's duty to determine whether the adoption would be in the child's best interests." In re Adoption of M.J.S., ¶ 30, 162 P.3d at 210. The court properly considered the factors in § 7003-5.6h.
¶ 16 In applying these factors, the trial court pointed out Foster Parents had provided a stable and loving home to B.O. for several years, and had been involved in his life nearly ten years. B.O. was strongly associated with them in the larger Bethany community. The court emphasized the ability of Foster Parents to provide for B.O.'s special educational needs and the strong ties and support system he had formed in the community. In addition, B.O.'s older brothers lived in the area. Further, B.O. was very active in extra-curricular activities and their church. The trial court found moving B.O. to Texas would require him to start over and would likely set him back educationally. The court also questioned whether Grandmother would have enough time for B.O. while raising his infant sister. Grandmother also had a disability, while Foster Parents were both healthy. In addition, Grandmother had not been involved in the school system for years and only one of her five children had graduated from high school. The court feared B.O. might be lost in the public school system in Texas and not have his special needs met. By contrast, Foster Parents amply demonstrated they could meet B.O.'s special needs and would provide the needed focus on education. The trial court concluded Foster Parents had met their burden, and B.O.'s placement with them should be continued until they could adopt B.O.[5] The court also required that a regular visitation schedule be implemented for Grandmother so she could remain an important part of B.O.'s life.
¶ 17 The Legislature provided specific factors in § 7003-5.6h that weigh on the best interests of a foster child when a long-term foster family and a relative both want to adopt the child. The trial court's determination that these factors favored Foster Parents was not against the clear weight of the evidence or contrary to law. It did not err in continuing placement of B.O. with Foster Parents pending their adoption of him.
¶ 18 AFFIRMED.
ADAMS, J., and JOPLIN, P.J., concur.
NOTES
[1] The parental rights of both Mother and Father had been terminated and B.O. was eligible for adoption.
[2] In custody proceedings, the trial court's findings and judgment are entitled to great weight and will not be set aside unless clearly against the weight of the evidence. Application of Smith, 1992 OK CIV APP 97, ¶ 4, 837 P.2d 929, 931,
[3] The father of each child also had his parental rights terminated.
[4] The child's attorney also filed an amicus curiae brief requesting the reversal of this order. The Oklahoma Supreme Court deferred ruling to the reviewing court regarding whether this brief would be accepted and whether Foster Parents would be granted leave to respond to the brief. We have accepted and considered this brief. However, the arguments by the child's attorney were substantially similar to those presented by the State. We thus deny Foster Parents' motion to file a response.
[5] The court specifically stated it did not consider Grandmother's income level in reaching this decision.